799 So.2d 732 (2001)
STATE of Louisiana
v.
James C. PIERCE.
No. 01-94.
Court of Appeal of Louisiana, Third Circuit.
October 31, 2001.
*735 J. Courtney Wilson, New Orleans, LA, Attorney for the Defendant/Appellant James C. Pierce.
James C. Pierce, Angola, LA, Pro Se.
Anthony L. Walker, Ville Platte, LA, First Assistant District Attorney.
Court composed of NED E. DOUCET, Jr., Chief Judge, HENRY L. YELVERTON, and GLENN B. GREMILLION, Judges.
DOUCET, Chief Judge.
The Defendant, James Pierce, appeals his conviction for driving while intoxicated, third offense, two counts of manslaughter, and one count of first degree vehicular negligent injuring.

PROCEDURAL HISTORY
James C. Pierce was charged by bill of information with driving while intoxicated, third offense, two counts of manslaughter, and one count of first degree vehicular negligent injuring. A motion to recuse the trial judge, Judge Preston Aucoin, was filed on October 16, 1998, and after a hearing conducted by a different division of the court, the motion was denied. The Defendant filed a writ application in this court. We denied relief, finding no error in the trial court's ruling. After trial, the jury returned a verdict of guilty on all counts. At the sentencing hearing, in December 1998, the Defendant re-urged his motion to recuse. The motion was denied by Judge Aucoin. The trial judge sentenced the Defendant to serve consecutive sentences of five years at hard labor for his conviction of third offense DWI, forty years at hard labor for each of the manslaughter convictions and five years at hard labor for first degree vehicular negligent injuring, for a total of ninety years. The trial court denied the Defendant's oral request for reconsideration of the sentence.
The Defendant appealed. This court vacated his sentences in an unpublished opinion and remanded the case to the trial court for disposition of an outstanding pro se motion for post-verdict judgment of acquittal. After the case was remanded, the Defendant filed another motion to recuse Judge Aucoin. On April 6, 2000, Judge Aucoin ruled that he lacked jurisdiction to sign an order setting the motion for hearing. The Defendant filed an emergency writ with this court. We ruled that the trial court erred in finding it lacked jurisdiction to assign the motion for hearing. This court remanded the case to the trial court for immediate assignment. This court denied an application for rehearing filed by the State. Subsequently, the supreme court denied the State's writ application. See State v. Pierce, 00-1654 (La.6/14/00); 763 So.2d 610. After a hearing on the motion to recuse on June 29, 2000, the motion was denied. A hearing on the Defendant's post-verdict judgment of acquittal was held on October 5, 2000. The trial judge denied the motion. On October 9, 2000, the Defendant was sentenced to serve five years at hard labor for third offense DWI, forty years at hard labor for each of the manslaughter convictions, and five years at hard labor for first degree vehicular negligent injuring. The judge ordered that the sentence for DWI *736 run concurrently with the sentences for the remaining counts, which are to run consecutively, for a total of eighty-five years. Defense counsel orally requested reconsideration of the Defendant's sentence. Counsel stated that he would follow-up with a written motion. While the oral motion to reconsider sentence was pending, the Defendant filed a pro se written motion to reconsider, which was denied. The trial court reserved defense counsel's right to file a similar motion within the delays of La.Code Crim.P. art. 881.1(A). On November 15, 2000, the oral motion to reconsider sentence was addressed in open court. The trial court noted that the oral motion was never followed up by a written motion. It denied the motion, noting that no specific grounds had been raised by defense counsel. The Defendant is before this court appealing his convictions and sentences.

FACTS
Late on the afternoon of May 3, 1997, the Defendant was driving under the influence of alcohol and marijuana when he ran over three young boys who were riding bicycles in Evangeline Parish. Two of the boys, who were brothers, were found dead at the scene by their parents. The third boy was pinned under the Defendant's vehicle and was seriously injured. After the wreck, the Defendant fled the scene and was taken into custody some eight hours later.

ERRORS PATENT
Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that the trial court improperly informed the Defendant that the prescriptive period for filing post-conviction relief began on the date he was sentenced. According to La. Code Crim.P. art. 930.8, the prescriptive period begins when the judgment of conviction and sentence become final. The trial court is directed to inform the Defendant of the correct provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. See State v. Dozier, 97-1564 (La.App. 3 Cir. 5/20/98); 713 So.2d 729, writ denied, 98-1694 (La.11/25/98); 729 So.2d 573. The time period for filing post-conviction relief was amended by Act 1262 of the 1999 Regular Legislative Session. The prescriptive period was changed from three years to two years. Accordingly, upon remand, the trial court is instructed to inform the Defendant of the two-year prescriptive period rather than the three-year prescriptive period.

RECUSAL OF TRIAL JUDGE
The Defendant contends that Judge Aucoin should have been recused from his case. The issue of recusal was raised and addressed several times in the lower court proceedings. The basis for the Defendant's argument on appeal is Judge Aucoin's alleged lack of candor in denying his prior involvement in a case against the Defendant.
On October 16, 1998, the Defendant filed a written motion to recuse Judge Aucoin on the basis that the judge had represented an individual in a case against the Defendant. The Defendant argued that Judge Aucoin's tenaciousness in the prior suit and his involvement in the instant case gave the appearance of impropriety. When the motion was filed in open court, the Defense stated that Judge Aucoin had represented a party against the Defendant. Although Judge Aucoin was not under oath, we note that he stated, "Yes, about 20 years ago and I didn't even know who Pierce was." The matter was then *737 taken up and denied by another division of the court.
At the hearing on this particular motion, the Defendant introduced the record from the matter of Estate of Elsie King v. Aetna Casualty And Surety. The Defense then proffered the Defendant's testimony that he was sued by the King family in the early '80's for injuries sustained by them and a judgment was rendered against him When Pierce was asked how Judge Aucoin was involved in the collection of the judgment, he explained that he was repeatedly ruled into court by Judge Aucoin and that "they" would pick him up at work, "arrest" him and bring him to court.
The Defendant filed a writ application in this court seeking review of the trial court's denial of his motion to recuse and this court found no error in the trial court's ruling. State v. Pierce, 98-1584 (La.App. 3 Cir. 10/17/98).
Defense counsel re-urged the motion to recuse on December 29, 1998, just prior to the original sentencing by Judge Aucoin. The Defendant presented no evidence and his argument essentially was that the judge's failure to acknowledge and attempt to conceal the prior representation gave the appearance of impropriety and violated all canons of judicial conduct and the Code of Professional Conduct. The State argued that the motion was untimely made after trial and noted that the matter had already been ruled upon. Judge Aucoin denied the motion.
After the case was remanded by this court for re-sentencing, the Defendant filed another motion for recusal, alleging essentially the same grounds. However, in his motion, he additionally stated that Judge Aucoin denied the allegations at the original recusal hearing and that he subsequently filed a complaint with the Disciplinary Board against defense counsel. Further, he alleged that the judge's action in instituting a hearing at a time when the Defendant was unrepresented by counsel exhibited bias. Judge Aucoin ruled that he lacked jurisdiction to sign the order setting a hearing on the motion. As noted previously, this court held the trial court erred in so ruling and remanded the case to the trial court for immediate assignment. An application for rehearing filed by the State was denied by this court on May 9, 2000. Subsequently, the supreme court denied a writ application filed by the State. See State v. Pierce, 00-1654 (La.6/14/00); 763 So.2d 610. The court denied the motion to recuse at a hearing held June 29, 2000.
At the hearing on this motion to recuse held June 29, 2000, attorney Kent Aguillard testified that during his representation of Pierce in a bankruptcy proceeding, he was aware of efforts by Judge Aucoin, who was then a practicing attorney, to collect money from Pierce. He explained that Pierce was served with either a rule to show cause or a judgment debtor rule which he showed to Aguillard. Aguillard told him it was probably filed "in ignorance" and he was going to look into it. Aguillard said he later sought to have the rule recalled or quashed and at the hearing held on the matter, Judge Aucoin appeared. Mr. Aguillard confirmed that Judge Aucoin was not involved in the case Estate of Elsie King v. Aetna Casualty and Surety, which was the case that precipitated the bankruptcy proceeding.
Judge Aucoin also testified at the hearing on the motion to recuse. He explained that after defense counsel cited the Elsie King case in the pretrial conference and he determined that he was not involved in that case, it aroused his curiosity. He located another case in which he had represented Morein Motors and taken a default judgment against Pierce for $2,600.00. Judge Aucoin testified that he *738 never saw Pierce in conjunction with that case. He confirmed that at the hearing of the matter, the judge held Pierce in contempt for his failure to appear. It appears that this was the basis for the contempt order because Judge Aucoin testified that the judge insisted that Pierce needed to be present. At the hearing on the motion to recuse, defense counsel questioned Judge Aucoin about his responses when he was first asked about his involvement in the case against the Defendant:
Q. Alright, Judge. Well, now, let me get back to the other question that I asked you. During the pre-trial conference in June of 1998, isn't it true, sir, that I brought to your attention that you had represented someone and I didn't specify that it was in the Elsie King case, I said you have represented someone against Mr. Pierce in the past and you had to uh ... a ... an attorney had to be hired to stop the ... the judgment debtor rule, isn't that correct, sir?
A. You may have asked it. If you asked it I didn't remember. I ... I never knew Pierce. I never knew Pierce until this criminal case came up so I probably told you I didn't remember.
Q. Alright, Judge. Let me ask you this then. When the original motion to recuse the trial judge was filed in your uh ... court on the Friday before this tri ... case was going to trial you read that rule ... that motion, isn't that correct?
. . . .
A. I read it.
Q. Alright and at that particular time the read ... the motion read The Honorable Preston N ... N ... Aucoin, prior to becoming judge represented a plaintiff in a cause of action against James C. Pierce, the defendant, herein. During the course of that litigation James C. Pierce was cited to appear before a state district judge ... state district court, even though he filed bankruptcy, in violation of the bankrup ... bankruptcy court's automatic stay order. As the attorney for the plaintiff, Judge Aucoin persisted in this conduct until he was threatened with a motion for sanctions in bankruptcy court. Did you remember reading that part of the motion, sir?
A. I don't remember reading it but uh... I ... I think I probably read it. I don't remember.
Q. Alright. Now, that particular part of the motion says nothing about Elsie King, does it, sir?
A. Obviously it doesn't.
Q. Alright.
A. If you read it ... if you read it correct.
Q. So, Judge Aucoin, when you responded that you had never represented anyone against James C. Pierce that was incorrect?
A. Not necessarily. I don't remember.
Q. Okay, your ... is it your testimony uh ... Judge Aucoin, that um ... is it your testimony, Judge Aucoin, that in the trial or at the hearing that was held on the Friday before the James C. Pierce matter that when confronted with this particular motion you said you didn't ever remember?
. . . .
A. This is what I'm telling. This is what I'm telling you. I'm telling you that I had no recollection whatsoever of James C. Pierce. I didn't know him and uh ... when you asked me that that's when I uh ... that's when uh ... I found out that in this court before Judge Soileau ya'll had cited the Elsie King case.
. . . .

*739 A. I don't remember. I don't remember.
On cross-examination, Judge Aucoin testified that he represented Morien Motor Company for about thirty years during his career as an attorney and probably had obtained hundreds of judgments on their behalf during that time.
On redirect examination, defense counsel attempted to impeach Judge Aucoin using a certified copy of the transcript from October 16, 1998 which contained Judge Aucoin's response when he was questioned about his involvement in a prior case against the Defendant. As discussed, when the motion to recuse was filed and defense counsel told Judge Aucoin that the ground was that he had represented a plaintiff against the Defendant, Judge Aucoin replied, "Yes about twenty years ago and I didn't even know who Mr. Pierce was." When asked about this at the hearing, Judge Aucoin acknowledged saying this.
Judge Aucoin was asked by the presiding judge whether his earlier representation of Morein Motors against the Defendant would have affected any of his decisions. He said it would not have. He explained that he never realized this was the same person until the motions to recuse were filed, but that it would not have made any difference.
The judge denied the motion to recuse finding the Defense did not establish that Judge Aucoin was biased.
In his brief, the Defendant focuses his argument on the fact that Judge Aucoin denied his involvement in the previous case. The Defendant contends that the prior representation itself does not require recusal, but the judge's lack of candor shows a personal bias and prejudice against the Defendant. He points out that although Judge Aucoin testified at the recusal hearing that he did not recall the Defendant, he had in fact appeared before the judge on July 15, 1994 for DWI first offense, on August 12, 1995 for driving under suspension and careless operation and on May 20, 1998 for speeding, driving under suspension, careless operation, resisting arrest and failure to use a signal when turning. Defendant provides no proof of this allegation, but we note that the July 24, 1994 guilty plea which was used as a predicate for the charge of third offense DWI was taken by Judge Aucoin. Finally, the Defense points to the following excerpts from the original sentencing proceeding as evidence of Judge Aucoin's bias against the Defendant:
Through your utter and disdainful disregard for human life and safety of our people, particularly our little children, and your avaricious and glutenous desire to selfishly satisfy your piggish and ravenous desire ... as a lion greedy of his prey, you embarked upon one of the most wicked and macabre ... journeys... in Evangeline Parish ... hellbent on gratifying your perverse, evil pleasures... by drinking alcohol and doping yourself into a stupor and committing... the most despicable crimes known to the citizens of Evangeline Parish.
. . . .
... It appears to the Court that you were deriving sadistic pleasure from your brutal and inhuman deeds.... I ask you, Mr. Pierce, what kind of a human being are you? Are you a human at all or a wicked, cruel, depraved, lowly sub human type of merciless monster... You have demonstrated to this court that you are the personification of wickedness, and you represent immoral depravity.
. . . .
You are a demoniac creature ... crazed, doped up, drunken drivers like *740 you recklessly determined to wreak havoc upon the lives of others.... Mister, you are a big time felonist....
The Defendant contends that this, along with the lack of a factual basis for the sentences, shows the sentences were not individualized and that the judge was biased.
La.Code Crim.P. art. 671 provides in pertinent part:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
. . . .
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
In State v. Edwards, 420 So.2d 663, 673 (La.1982), the supreme court stated:
It is well settled that a trial judge is presumed to be impartial. State v. Collins, 288 So.2d 602 (La.1974). For an accused to be entitled to the recusation of a trial judge on the grounds of bias, prejudice and personal interest such bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusory allegations. State v. Qualls, 377 So.2d 293 (La.1979).
The evidence presented by the Defendant, including the inconsistencies regarding the prior representation of a party against the Defendant and the fact he previously presided over a proceeding involving the Defendant did not warrant recusal of Judge Aucoin. The trial judge's conduct during the trial did not demonstrate prejudice. Further, the guilt or innocence of the Defendant was decided by a jury, not the judge. Furthermore, contrary to the Defendant's assertion, Judge Aucoin did provide a factual basis for the sentences he imposed. At sentencing, he stated that he based the sentences he imposed on the information contained in the pre-sentence investigation report. In imposing the sentences, the judge focused on the Defendant's unmerciful attitude toward the victims' families when they arrived at the scene of the wreck. He also mentioned that the Defendant attempted to drive off in his car to escape, in total disregard for the well-being of the child trapped under the car. Judge Aucoin also noted that the Defendant smirked when the jury verdicts were read. Finally, the judge noted that there was an undue risk that the Defendant would commit another crime if he received a suspended sentence, that the Defendant was in need of correctional treatment or a custodial environment and finally, that a lesser sentence would deprecate the seriousness of the crimes for which he was convicted. The comments made by Judge Aucoin at sentencing do not show that he was biased against this Defendant.
In his reply brief, the Defendant contends that the judge's questioning of his witnesses, Sherry Kordish and Sylvia Riser, at the November 23, 1998 hearing on a motion for continuance and a motion for post-verdict judgment of acquittal evidenced his bias. On November 19, 1998 and November 23, 1998, the Defendant's motion for continuance was heard by the court. The Defendant's trial attorney had been temporarily suspended from practicing law and the Defendant did not want another attorney appointed to represent him for sentencing. Thus, he sought a continuance of his sentencing proceeding.
During the hearing on the motion, the trial judge asked the Defendant who prepared the motion for continuance and a motion for post-verdict judgment of acquittal which had been submitted to the court. The Defendant claimed that an inmate, *741 Steve Marcantel, wrote them and one of his mother's coworkers typed them. The judge found out from the Defendant's father that his wife had gotten the forms from Sherry Kordish, her cousin who is a legal secretary. Mrs. Pierce's coworker, Sheila Riser, then "typed the names in." The judge subpoenaed Ms. Kordish, Ms. Riser and Steve Marcantel to find out who prepared the motions. The Defendant contends in his brief that the judge "vehemently admonished" both Ms. Kordish and Ms. Riser and in questioning Ms. Riser asked her if she knew what perjury was. As evidence of the judge's bias, the Defendant notes in his brief that the judge did not ask State's witness Bobby Taylor if he knew what perjury was although he gave conflicting statements to the Sheriffs Office on May 4, 1997.
It appears that the judge was trying to ascertain who filed the pro se motions because he was concerned that some individuals may be involved in the unauthorized practice of law. The judge's concern does not indicate that he was biased against the Defendant in this case. We find no merit in the Defendant's assertion that the trial judge should have been recused.

EVIDENCE OF PRIOR CONVICTIONS AS PREDICATES FOR ENHANCEMENT
In this assignment of error, the Defendant contends the trial court erred in admitting into evidence his first DWI conviction because he was not advised of his right to remain silent at the prior proceeding and he was not asked whether he read and understood the guilty plea form. Additionally, counsel claims the Defendant was not advised at either his first or second DWI guilty plea proceeding that the "enhancement process could lead beyond DWI convictions to manslaughter convictions."
In State v. Carlos, 98-1366 (La.7/7/99); 738 So.2d 556, the supreme court held the principles set forth in State v. Shelton, 621 So.2d 769 (La.1993) are applicable to multiple offender DWI cases. In Carlos, 98-1366 at p. 6; 738 So.2d at 559, the court reiterated the burden shifting principles in Shelton:
In Shelton, this Court recognized that Boykin does not require that the entire burden be placed on the prosecution in a recidivism proceeding. 621 So.2d at 779 (relying on Parke, 506 U.S. at 34, 113 S.Ct. at 525-26). Rather, the presumption of regularity that attaches to prior convictions encouraged us to revisit our previous system of placing the entire burden on the State to prove the validity of prior convictions. Id. Consequently, we held that when a defendant denies the allegations contained in the bill of information in an habitual offender proceeding, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. Id. If the State meets this initial burden, the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. If the defendant carries this burden, then the burden reverts to the State to prove the constitutionality of the plea. Id. The State will meet this burden by producing a "perfect" transcript of the guilty plea colloquy. Anything less than a "perfect" transcript, such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant's Boykin rights were prejudiced. In Shelton, we held that the State carried its initial burden under the revised burden-shifting rules by producing a *742 well-executed guilty plea/waiver of rights form and a minute entry which stated, inter alia, that the judge "gave the Defendant his rights." Id. at 770, 780.
Prior to trial, the State filed a Motion in Limine to Determine Legal Validity of Prior Convictions with the prior transcripts, bills of information and minutes attached. A hearing on the motion was held May 29, 1998. At the hearing, the State introduced the bill of information, court minutes, the waiver of rights form and the transcript of the July 29, 1994 guilty plea to first offense DWI in Evangeline Parish. This satisfied the State's initial burden of proving the existence of the plea and that the Defendant was represented by counsel. The burden then shifted to the Defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. The Defense did not carry this burden of proof. At the hearing, defense counsel stated:
Judge in addition to the evidence which was submitted by the District Attorney I'd like to offer, file and introduce into evidence, the original tape which was taken in this matter. I, my experience has been is that there is some, there is some things left out as far as who and when these, this transcript was heard, and therefore I'd like to have a, the original or if the Court would submit a duplicate original of that particular tape so that the, the, any reviewing Court may refer to it if they deem my argument proper.
The judge denied this request as well as counsel's subsequent request that a "proffer be entered with the tape." Counsel then argued that this predicate offense should not be admissible because the plea involved an en masse colloquy. He also contended there was insufficient information given to the Defendant regarding enhancement under the DWI statute. Additionally, he objected to the admissibility of the guilty plea waiver form because it was given to defense counsel and the Defendant right when the plea was being taken and "therefore ha[d] no form and substance...." Later, he explained that he objected to the waiver form because he felt the colloquy alone did not "ascertain" whether the Defendant understood the guilt plea proceeding. The judge overruled the Defense objections and held that this conviction was admissible in evidence at trial.
In State v. Coleman, 99-1925 (La.App. 3 Cir. 6/21/00); 762 So.2d 1134, this court held that the defendant did not satisfy his burden of proof when he simply questioned the validity of the minute entry introduced by the state. Specifically, defense counsel stated that the minutes reflected a waiver of rights form was used, but he could not tell what form was used nor which of the defendant's rights he was apprized of. He claimed the rights form may not have indicated that the offense could be used for enhancement purposes. This court, relying on the following discussion from State v. Stewart, 27,049, pp. 6-7 (La.App. 2 Cir. 5/10/95); 656 So.2d 677, 682, writs denied, 95-1764 & 95-1768 (La.12/8/95); 664 So.2d 420, found defense counsel's objection was simply a reliance on the absence of a notation in the minute entry and was insufficient to shift the burden of proof back to the state:
Concerning his Maryland escape conviction in August 1982, defendant contends that the state failed to meet its burden of showing a Boykinization at the taking of the guilty plea. More specifically, while conceding that the introduced minutes reflect a counselled plea and even satisfy the prosecution's initial requirement of proof, Stewart argues *743 that Shelton permits him to produce "affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea," and thus shift the burden back to the state, by merely pointing out that the presented documentation fails to reveal a Boykin colloquy between him and the judge.
Defendant's contention, however, ignores the Shelton court's design for preserving the presumption of regularity in final judgments. His proposed course, viz., allowing a defendant to simply rely upon the absence of a Boykin notation within the minute entry, would disregard that presumption and essentially reinstate the prior jurisprudence that placed the entire burden of proof upon the state. Contrarily, Shelton requires affirmative evidence from the defendant and indicates that he can attempt to meet his burden "with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence." State v. Shelton, supra, at 779, fn. 24. Here, Stewart's reliance on the alleged deficiency in the prosecution's evidence is misplaced. In fact, the situation before us presents exactly the circumstance under which the presumption is intended to operate. See, e.g., State v. Smith, 415 So.2d 930 (La.1982); State v. Jefferson, 386 So.2d 77 (La.1980); State v. Holden, 375 So.2d 1372 (La.1979), (all three cases requiring the defendant to affirmatively show substantial defects in out-of-state predicate convictions).
Coleman, 99-1925 at p. 4; 762 So.2d at 1136.
In this case, defense counsel did a little more than did the attorneys in Coleman and Stewart. Counsel attempted to introduce the tape of the colloquy and he may have intended to rely on some of the evidence introduced by the State. However, this vague reference to the transcript was not enough for counsel to have met his burden of proof, which means nothing more was required of the State beyond that point.
Even if counsel had met his burden of proof, it is important to note that he did not specifically allege that the prior plea was deficient in that the Defendant was not apprised of his right to remain silent, as he alleges on appeal. As a result, the State was not put on notice of this alleged deficiency and thus could not present evidence to attempt to rebut the Defendant's claim. Therefore, the claim regarding the failure to advise the Defendant of his right to remain silent is not properly before this court on appeal.
As for the June 28, 1995 guilty plea in Lafourche Parish, the State introduced the documents which were attached to its motion in limine. The judge informed the prosecutor that if he ruled in his favor, he would "make that contingent on the proper certification of the documents being put in the record before the trial of this matter begins." Introduced by the State were the bill of information, court minutes and the transcript of the guilty plea proceeding showing the Defendant was represented by counsel. Defense counsel objected to the validity of the plea because he claimed the Defendant was informed that he had a right to a trial by a judge when he was entitled to a trial by jury. Further, defense counsel claimed the Defendant was misled and prejudiced by the fact that he was erroneously informed that for his next offense, he could be charged with third offense DWI when in fact he could have been charged with fourth offense.
Again, this was not sufficient to meet the Defense's burden of proof. On appeal, the Defendant contends that this plea is deficient in that he was not informed that the enhancement process could lead to a *744 manslaughter conviction. This objection was not raised at the hearing. Therefore, this claim is not properly before this court.
On the second day of trial, defense counsel stipulated that the Defendant had been previously convicted of DWI in Lafourche and Evangeline Parishes. However, the following statement made by defense counsel implies he may have filed a motion in limine on behalf of his client:
BY MR. DESHOTELS: Counsel for defendant:
And Your Honor we, because we had previously filed and objected on our Motion in Limine our rights and reservations have been reserved previous to today because of the Court's....
BY THE COURT:
All right all of the rights of the defendant are reserved.....
Although it appears from defense counsel's statement that he filed a motion in limine, there is no such motion in the record before this court and the lower court clerk's office has certified that the record contains all of the Defense motions filed in the case.
In this assignment of error, Defense counsel also notes that at the October 5, 2000 hearing, the trial court refused to provide the Defendant with tapes of his prior Boykinization hearings and the judge assumed, without inspection, that the error was typographical.
At the October 5, 2000 hearing on the Defendant's November 12, 1998 pro se motion for post-verdict judgment of acquittal, he argued that the transcript of his guilty plea in docket number 50,289 failed to show that he was advised of his right to remain silent. When the Defense sought to introduce the transcript in evidence, the State objected on the ground that new evidence should not be permitted at a hearing on a motion for post-verdict judgment of acquittal. The judge commented that he thought that there was simply an omission from the colloquy and that, if played, the tape would have revealed that more than "remain" was said. Defense counsel objected to the court's consideration of the tape because it was not filed in evidence and they had not had access to it. The State then argued that the documents had been previously found admissible and that this particular argument had not been previously advanced. The court "sustain[ed] the State's position" and denied the motion.
Consequently, the Defense's need for the tape is moot. Therefore, the trial court should not be ordered to provide the tape to the Defendant, as he requests.

BLOOD ALCOHOL TEST
The Defendant claims the trial court erred in allowing the admission of the blood alcohol test results because they had no probative value and were too remote because the test was administered approximately eight hours after the accident occurred. The State argues that the test result goes to the weight of the evidence and is contrary to the Defendant's statement given at the police station after the accident. Several witnesses testified as to the Defendant's condition prior to the accident; the State contends the test results support their testimony, while discounting that of the Defendant. In his reply brief, the Defendant contends that the error is not subject to the harmless error analysis, as contended by the State in its brief.
At trial, Officer Joseph Fontenot of the Ville Platte Police Department testified that in the early morning hours of May 4, 1997, he first conducted several tests to determine if the Defendant was intoxicated. At 4:14 a.m., the Defendant was advised of his rights and at 4:17 an intoxilyzer test was performed. Officer Fontenot testified the Defendant's blood alcohol level *745 was ".110 grams percent." The Defense did not object to this testimony, but when the State sought to introduce the DWI arrest report package, defense counsel objected, contending the test result did not reflect the level of intoxication at the time of the accident. The Defense's objection was as follows:
Your Honor this document does not, is not relevant whatsoever to determine the level of intoxication at Mr., of Mr. Pierce at the time that the accident occurred. It is sought and introduced only to confuse this jury. There is nobody here and there is nobody that is going to come that's going to testify that this document and this reading of intoxication has any relevance. In fact Mr. Coreil said yesterday to this same very jury that the test, that the PEI test was not valid as to what Mr. Pierce's alcohol content was at the time of the accident...."
The State responded that the test result was relevant for the following reason:
Your Honor in as far as the relevance is concerned, the testimony thusfore (sic) has been that he gave a statement that he drank four 16 ounce cans of beer after he got home and only one could be found which was a 12 ounce or a 10 [ounce] can of Old Milwaukee. That is relevant. The other relevance is that if that testimony is correct then coming off of the drunk would be revealed as far as this evidence is concerned and we would submit it into evidence at this time Your Honor.
In the Defendant's statement to police at the station, which began at 4:36 a.m., he initially stated that he had not been drinking. When asked if he was under the influence of alcohol at the time of the statement, he replied that he was, having consumed three or four sixteen-ounce beers after the accident. The judge ruled that the evidence would be admissible and the jury could decide whether the test was valid.
On cross-examination, after the evidence was admitted, Officer Fontenot affirmed that he was not saying that the reading he got at 4:43 in the morning was an indication that on the evening before at 8:00 p.m. the Defendant had any alcohol in his system.
On appeal, defense counsel appears to challenge the validity of the test result as well as the relevance of it. The first issue to be considered in addressing these issues is whether the State relied on the presumption of intoxication at trial.
On several occasions, the State indicated that it was not relying on the statutory presumption of intoxication. The prosecutor admitted in his opening statement that there was a problem with the test in that it was given about eight hours after the accident happened. He conceded that the test was not determinative. Additionally, in his closing argument, the prosecutor said they did not know how much weight to give the test and that this was an issue for the jury to decide. He later stated:
We showed you about the alcohol content in his blood, it was .11. In a Court of law generally that would be all that we would need to do to prove DWI, but I told you from the beginning that I had problems with the test and I do and that's only for you to decide. But when Officer Fontenot came here and testified to you on all of those questions, you know I asked him all of those questions, he did a lot of, he passed a lot of the test. At that time he was only .11. You know he touched his nose five out of six times. (Unintelligible). Is it because he wanted to drink those few beers at home after he ran away or is it because he was *746 coming down from a drunk. I don't know, but the test is eight hours later and to tell you the truth the State does not give a lot of weight to that test, but you can if you so desire.
In his rebuttal closing argument, the prosecutor said he felt they had proved the Defendant was intoxicated at the time he was operating the car. He then stated, "We proved to you that he was intoxicated at the time he was operating it, common sense. We don't need a test. We never needed the test, but we don't play hide the ball."
After reviewing the evidence, we find that the State did not rely on the statutory presumption of evidence but proved intoxication by independent evidence.
At trial, Bobby Taylor, a friend of the Defendant, testified that he was at his mother's house with the Defendant immediately before the wreck and that the Defendant was intoxicated. He testified that the Defendant did not know where he was and twice inquired about his location. According to Mr. Taylor, the Defendant had slurred speech and when he left, was driving in an unsafe manner. Taylor further testified that he saw the Defendant and Kenneth Clark smoke a marijuana cigarette while he was at Taylor's house.
Mr. Clark testified that he drank a beer or two and smoked a joint with the Defendant right before the accident. According to Mr. Clark, the Defendant did not know where he was and his speech was slurred. He confirmed Taylor's testimony that the Defendant twice asked where he was. Clark and the Defendant shared a marijuana cigarette and each took about eight or ten hits. Mr. Taylor and Mr. Clark both thought the Defendant was too drunk to be driving and Mr. Clark refused an invitation to ride with the Defendant in his car. Mr. Clark testified that approximately twenty minutes after the Defendant left, they heard ambulances.
The mother of the two dead boys testified that when she arrived on the scene of the accident, the Defendant smelled of alcohol, his eyes were yellow and he was unsteady and unbalanced. Their father testified that he too smelled alcohol on the Defendant and that the Defendant had slurred speech and had to lean against something to stand up.
John Goodman, a relative of the deceased victims, testified that when he came upon the scene, the Defendant smelled of alcohol and was drunk. He had seen the Defendant drinking earlier in the day. Also, Robert Manuel, who also went to the scene to render aid to the victims, testified that the Defendant was leaning up against the car and did not offer any assistance when they lifted the car to free the child trapped beneath it. Mr. Manuel testified that the Defendant appeared intoxicated because he was swaying and smelled of alcohol.
Lieutenant Dwayne Fontenot of the Evangeline Parish Sheriff's Office took the Defendant's recorded statement at about 5:00 a.m. the morning after the wreck. The Defendant said he drank only one beer before the wreck. He said he drank three or four sixteen-ounce Old Milwaukee beers at his house after the wreck. Following the statement, Lieutenant Fontenot searched the Defendant's residence and found only one twelve-ounce beer can.
Having so found, we must determine whether the blood test evidence was relevant for a purpose other than showing intoxication at the time of the offense. We find that it was relevant in that it showed that the Defendant had been drinking at some point prior to the administration of the test. Coupling this with Lieutenant Dwayne Fontenot's testimony that he searched the Defendant's residence and *747 found only one twelve-ounce beer can, it was probative to show that the Defendant had not consumed large quantities of alcoholic beverages while at home. We further find that the probative value of the blood alcohol test result outweighs any prejudicial effect.
The Defendant additionally claims the trial court erred in admitting the test results where no provisions for the repair, maintenance, inspection, cleaning and certification or chemical accuracy was presented as required for breathalyzer testing. In State v. McElroy, 553 So.2d 456 (La.1989), the supreme court held that blood alcohol tests not obtained in accordance with La.R.S. 32:661-666 may still be admissible if the state does not rely on the statutory presumption of intoxication. Specifically, the court stated:
Thus, without the benefit of the statutory presumption of intoxication, the state may nonetheless endeavor to prove that a defendant was guilty of driving while intoxicated, and, in the process, attempt to use all admissible evidence, including the hospital record, the testimony of the technologist performing the blood alcohol test, and expert testimony concerning the likely effect upon an individual of a given blood alcohol level.*
* Generally, the blood alcohol test result, as part of a hospital record, is admissible absent compliance with Rowell providing that the trier of fact is not charged with the statutory presumption of intoxication. This is not to say, however, that the district court is bound to admit a hospital record or a blood level report in all instances. Should there be no predominant evidence of "careful adherence to strict procedures in administering intoxication tests," State v. Jones, 316 So.2d at 105, or in the event that a defendant takes issue with the qualifications of the technician, the quality of the testing machine, or the maintenance of the equipment, and so forth, the court, in the interest of due process and fairness, may well be entitled to bar the evidence. We are not confronted with that situation in this case because the defendant did not specifically object to the accuracy of the hospital record or blood alcohol test result. Rather, the defendant invoked Rowell, which concerns the adequacy of D.P.S. regulations governing blood alcohol testing when the state relies on the statutory presumption of intoxication, and we have determined that Rowell is not pertinent when the state does not rely on the statutory presumption of intoxication.
In all events, we need not decide whether the blood alcohol test performed in this case was adequate to satisfy the defendant's due process rights because we reverse on an independent ground, i.e., the defendant's invocation of his physician-patient privilege, which bars the admission of the blood alcohol test result.
Id. at 458.
In this case, the State introduced evidence other than the test results to prove the Defendant was under the influence of alcohol and marijuana at the time the accident occurred. Since the State did not rely on the presumption of intoxication, it was not required to present evidence regarding the repair, maintenance and cleaning of the machine.
Further, the Defendant claims that the inadmissible blood alcohol results coupled with the prosecutor's improper argument and a confusing jury instruction created an unconstitutional presumption that relieved the State of its burden of proof.
*748 Specifically, Defendant refers to the following excerpts of the prosecutor's closing argument:
And we listed each and every element of the things that we had to prove to you and everything that we had to prove to you has come down to one issue, under the influence. Under the influence. Operating a vehicle while intoxicated, under the influence.
One decision to make, under the influence. That's all that you have to find is that when this accident occurred he was under the influence and at that time two deaths occurred so there is a conviction of Manslaughter on Tyler. There is a conviction of Manslaughter for Joshua and there is a conviction for First Degree Vehicular Negligent Injuring of Neal, they've stipulated that it fits within the statute and he was under the influence, that's all we have to prove.
Finally, in support of his claim, the Defendant points to the following jury instruction:
Further, you are not to consider the evidence of one offense as evidence of any of the other offenses against the defendant, except where the offense of Third Offense Driving While Intoxicated is an element of the two counts of Manslaughter.
The defendant is not to be found guilty of one offense simply because he may have committed another.
In other words, you must consider the evidence of each of the four offenses separately.
Neither the prosecutor's argument nor the jury instruction referred to by the Defense is confusing. Further, it does not create a mandatory presumption of intoxication.
Defendant further maintains that a reasonable juror would have been in the "quandary" of choosing between the confusing instruction, the State's improper remarks regarding presumptions, an inadmissible P.E.I. test and otherwise insufficient evidence of intoxication. Further, he claims the jury charge read as a whole was confusing and allowed the jury to consider additional irrelevant evidence of the July 15, 1994 DWI unconstitutional conviction.
Defendant's claims have no merit. The prosecutor's remarks were not improper. The jury instruction was not confusing as a whole. The Defendant's claim regarding the unconstitutional July 15, 1994 conviction has been addressed by this court and found meritless.

DOUBLE ENHANCEMENT/DOUBLE JEOPARDY
The Defendant claims he should not have been charged with manslaughter. He seems to argue a theory of "double enhancement" because he was charged with manslaughter based upon a felony DWI that had already been enhanced.
La.R.S. 14:31(A)(2)(a), in pertinent part, states:
A. Manslaughter is:
. . . .
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person;
. . .
The Defendant was convicted and sentenced for both the underlying felony DWI and two counts of manslaughter. The Defendant argues that the unforseen combination of two criminal statutes, presumably DWI third offense and manslaughter, is illegal.
*749 In the instant case, the State charged the Defendant with felony DWI and manslaughter based upon the perpetration of the DWI at the time of the death of the victims. A technical reading of the manslaughter statute clearly allows such use. The statute requires that the offender be engaged in the perpetration or attempted perpetration of any felony not enumerated in La.R.S. 14:30 or 30.1. The Defendant was engaged in a perpetration of an underlying felony at the time of the victim's death, whether or not he intended to cause death or bodily harm. Therefore, we find the Defendant was not subjected to "double enhancement."
Still, the Defendant seems to contend that he should not have been sentenced under the manslaughter statute because he is being twice penalized; once for the underlying felony DWI, and twice for the same conduct under the manslaughter statute. Because of the vagueness of Defendant's argument we will consider double jeopardy out of an abundance of caution. Both the United States and the Louisiana Constitutions protect individuals against twice being put in jeopardy for the same offense. One of the fundamental guarantees is protection against multiple punishment for the same offense. State v. Mayeux, 498 So.2d 701 (La.1986). Louisiana courts have applied two distinct tests to determine whether offenses are the same for double jeopardy purposes. In Blockburger v. U.S., 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court set out the following test: "... where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two different offenses or only one, is whether each provision requires proof of an additional fact which the other does not." See also State v. Coody, 448 So.2d 100 (La.1984); State v. Vaughn, 431 So.2d 763 (La.1983); and State v. Doughty, 379 So.2d 1088 (La.1980).
The other standard used by the courts is the "same evidence test" as follows: "If the evidence required to support a finding of guilty of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial." See also Coody, 448 So.2d 100; Vaughn, 431 So.2d 763; and State v. Steele, 387 So.2d 1175.
In a single trial, as in this case, the legislative intent regarding multiple punishment must also be examined. State v. Smith, 95-0061 (La.7/2/96); 676 So.2d 1068. In Smith, the Louisiana Supreme Court held that separate convictions and sentences for manslaughter and feticide, which involved the killing of different victims, did not violate double jeopardy. The Court reasoned that the two statutes were aimed at different evils, and involved different elements and required different proof.
In this case, the Defendant was charged and convicted of one count of third offense DWI, two counts of manslaughter, and one count of first degree vehicular negligent injuring. The manslaughter charges must be supported by the commission of a felony or an attempt to commit a felony. The Defendant was specifically charged with manslaughter based upon the "perpetration or the attempted perpetration of a felony grade DWI offense in violation of R.S. 14:98." In connection with felony DWI, the legislature specifically stated that "on a conviction of a third offense" the offender shall be imprisoned with or without hard labor. La.R.S. 14:98. Once convicted of manslaughter, *750 the Defendant was punished for the felony which he was perpetrating at the time of the death of the victims, i.e. DWI, and cannot be punished a second time for the same offense. A similar double jeopardy analysis has been considered in Louisiana's felony-murder doctrine. When proof of the commission of a felony is an essential element of second-degree murder, double jeopardy precludes the conviction and punishment of the defendant for both crimes. State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La. 1974). Thus, by extension of the same principal, the "felony-manslaughter" conviction in this case cannot be had without proof of all of the elements of the felony DWI. When the two offenses are the "same" under either the Blockburger test or the "same evidence" test, separate prosecution of each is jeopardy barred. Therefore, we are compelled to find the Defendant's right against double jeopardy was violated by the convictions and resulting sentences for third offense DWI and two counts of manslaughter. To remedy a violation of double jeopardy, this court must vacate the conviction and sentence of the less severely punishable offense and affirm the conviction and sentence of the more severely punishable offense. State v. Doughty, 379 So.2d 1088 (La.1980); State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990).
As a result, the Defendant's conviction and sentence for third offense DWI must be vacated.
The Defendant further claims that there is no way that any court could have adequately advised him in his predicate pleas of this type of enhancement and the failure to do so is not harmless. This court has already addressed this argument and found it meritless.

EXCESSIVE SENTENCE
The Defendant contends that he received excessive sentences when the court resentenced him to a total of eighty-five years. He argues that the sentences should have been run concurrently rather than consecutively particularly since he has no prior conviction for crimes of violence against a person. Defendant also implies that the Defendant's age was not taken into account in sentencing. In his reply brief, the Defendant contends the trial judge did not take his family into account in imposing such a harsh sentence. The Defendant claims he did not receive the sentencing transcript because of the trial court's failure to comply with his requests. However, the sentencing transcript is part of the record on appeal and would have been available to the Defendant had he asked to check out the record.
The Defendant was originally sentenced to consecutive sentences of five years at hard labor for his conviction of DWI, third offense, forty years at hard labor for each of the manslaughter convictions, and five years at hard labor for first degree vehicular negligent injuring, for a total of ninety years. After his sentences were vacated by this court on appeal, he was resentenced to serve five years at hard labor for third offense DWI, forty years at hard labor for each of the manslaughter convictions, and five years at hard labor for first degree vehicular negligent injuring. The judge ordered that the sentence for DWI run concurrently with the remaining sentences, which are to run consecutively, for a total of eighty-five years. The five year sentence for third offense DWI has been vacated by this court.
As noted earlier, the Defendant filed a timely pro se Motion for Reconsideration of Sentence which was denied by the trial court. At the re-sentencing, the judge adopted his original reasons for sentencing, *751 which were extensive. At the original hearing, the judge noted the following prior offenses which were included in the presentence investigation report:
Number one, January 7, 1981 you were convicted of Drunkenness in Anahuac, Texas, Chambers County.
Number two, on July 24 or 25, 1981 you were convicted of Possession of a Controlled Dangerous Substance, to wit; crack cocaine in Scurry County, Texas, and sentenced to five years, sentence suspended, five years probation, probation revoked on May 20, 1984 and paroled on November 21, 1984.
Number three, May 10, 1998 you were convicted of DWI, possession of marijuana not more than two ounces, in Scurry County, Texas and fined $300.00 and jailed for 72 hours.
Number four, September 10, 1987 you were convicted of DWI in Harrison County, Texas and fined $1,500.00 and sentenced to 180 days in jail, suspended and placed on 24 months probation and a $850.00 fine.
Number five, January 10, 1988 you were convicted of DWI in Dallas, Texas, Dallas County Criminal Court and given a 15 day jail sentenced and fined $300.00.
Number six, July 15, 1994 you were convicted of DWI First Offense in the 13th Judicial District Court, Evangeline Parish and given a four month jail sentence, suspended, and placed on one year active supervised probation and fined.
Number seven, March 28, 1995, you were convicted of DWI Second Offense in the 17th Judicial District Court, Parish of Lafourche and given a six months parish jail sentence, suspended, and a $500.00 fine and court cost.
Number eight, August 12, 1995, you were convicted of driving under suspension, careless operation with an accident, in the 13th Judicial District Court, Evangeline Parish, and fined $400.00 and court costs, or ten days in jail.
Nine, May 20, 1998, you were convicted of speeding, 87 miles per hour, driving under suspension, careless operation of a motor vehicle, resisting arrest by flight, failure to use signal when turning, in the 13th Judicial District Court and fined $400.00 and court costs.
At both sentencing proceedings, the judge found there was an undue risk that during the period of a suspended sentence or probation he would commit another crime, that he was in need of correctional treatment or a custodial environment and, that a lesser sentence would deprecate the seriousness of his crimes.
"Trial judges are given wide discretion in imposing sentences, and a sentence imposed within statutory limits will not be deemed excessive in absence of manifest abuse of discretion; however, maximum sentences are reserved for the most egregious offenders." State v. Jones, 99-1074 (La.App. 3 Cir. 3/8/00); 758 So.2d 905, 907. In light of the Defendant's criminal history which includes numerous crimes involving alcohol and controlled dangerous substances and considering the seriousness of the crimes currently before this court, this court finds that the trial court did not abuse its discretion in imposing the maximum sentence for each offense and ordering that the sentences be served consecutively. Therefore, the sentences will not be overturned, except as previously noted in this opinion.

SUFFICIENCY OF THE EVIDENCE
The Defendant contends the "insufficient" P.E.I. test, the unconstitutional July 15, 1994 DWI conviction, and the State's improper "burden shifting" remarks, which *752 created a mandatory presumption, cumulatively resulted in insufficient evidence being presented to prove manslaughter. He does not appear to challenge the sufficiency of the evidence presented at trial. Rather, he limits his argument to issues which have been previously addressed and found meritless. Therefore, this claim has no merit.
In the Defendant's reply brief, he contends there was insufficient evidence to sustain the manslaughter convictions. In support of his argument, he again re-urges arguments previously found meritless. Additionally, he contends the State attempted to mislead this court in its brief when it stated that the victims were "huddled in the ditch." He points to an excerpt from the record in which P.F., the only surviving victim, testified that when they heard the Defendant's car coming, they got on the side of the road "almost in the ditch" and they were still moving slowly. Additionally, the Defendant points out that the State contended in its brief that the Defendant failed to render aid to the victims or their parents, but Mr. Neal Fontenot testified at trial that he saw the Defendant "tending to" one of the victims. The Defendant claims the State is attempting to mislead this court by its "complete lack of candor." However, the discrepancies pointed out by the Defendant do not warrant a different result being reached in the case.

MOTION FOR Post-verdict JUDGMENT OF ACQUITTAL
The Defendant claims the trial court erred in refusing to allow him to present evidence at the hearing on the motion for post-verdict judgment of acquittal. He notes that at the hearing he objected to the constitutionality of his 1994 guilty plea using the transcript to show he was not advised of his right to remain silent. After the judge found that the deficiency was probably a typographical error, the court reporter, according to the Defendant, recanted her prior statement regarding the authenticity and correctness of the transcript. The Defendant requests this court remand the case with instructions that the judge provide the Defendant the tape to ensure that he be allowed to ascertain its authenticity.
At the hearing on the motion, when the Defense sought to introduce the transcript of the prior guilty plea, the State objected on the basis that the only evidence that should be considered was the evidence presented at trial. The State argued that the motion should be granted only if the evidence did not reasonably permit a finding of guilt.
The Defendant is again essentially attacking the validity of the prior guilty plea. This issue has been addressed by the court and found meritless.

CONCLUSION
Having found a double jeopardy violation occurred, the Defendant's conviction for DWI, third offense is reversed and his sentence vacated. The remaining convictions and sentences are affirmed.
The trial court is directed to inform the Defendant of the correct provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.
AFFIRMED IN PART; REVERSED AND SENTENCE VACATED IN PART.