# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

KA 09-923

**STATE OF LOUISIANA**

**VERSUS**

**RICHARD W. BLACK**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 13,908
HONORABLE ERIC R. HARRINGTON, PRESIDING
\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy H. Ezell, Judges.

**AFFIRMED IN PART; REVERSED IN PART.**

Van H. Kyzar, District Attorney
Cloyd Benjamin, Jr., Assistant District Attorney
P.O. Box 838
Natchitoches, LA 71458-0838
(318) 357-2214
COUNSEL FOR APPELLEE:
    State of Louisiana

G. Paul Marx
Louisiana Appellate Project
P.O. Box 82389
Lafayette, LA 70598
(337) 237-2537
COUNSEL FOR DEFENDANT-APPELLANT:
    Richard W. Black

**COOKS, Judge.**

_____FACTS AND PROCEDURAL HISTORY

The facts of the instant offense stem from those in a previous appeal. In _State v. Black_, an unpublished opinion bearing docket number 08-989 (La.App. 3 Cir. 3/4/09), Defendant, Richard W. Black, appealed his conviction for aggravated assault upon a peace officer with a firearm. In the lower court, the Defendant filed a "Motion for Post-Verdict Judgment of Acquittal and for New Trial" and a "Supplemental Motion for New Trial," attaching the affidavit of Ruth Ann Brimzy, and asked that she be examined at the hearing on the Defendant's post-trial motion. The affidavit indicated that Ms. Brimzy was with the victim, Wildlife Agent McAlpin, who reported that he and another game warden lied about the Defendant pointing a gun at them--the fact which formed the basis for his conviction. It is this affidavit which forms the basis for the instant convictions.

In the instant case, the State alleged in the bill of information that Defendant falsified the statements in the affidavit and then filed the affidavit in the record of the proceeding, along with his "Motion for Post Verdict Judgment of Acquittal and for New Trial," in an effort to manipulate the judicial process. At sentencing, the trial court confirmed that the affidavit was prepared by the Defendant with false statements, signed by Ms. Brimzy, and then presented to the court. The trial court stated:

> The statement falsely impugned the integrity and the morality of uh, Wildlife Agent, David McAlpin, who was the victim of the aggravated assault conviction. And all of this was done with the intent of influencing the Court's decision uh ... both, I think, on the Motion for New Trial, and (inaudible) that was denied ultimately on sentencing Mr. Black on that aggravated assault charge.

On March 4, 2008, Defendant was charged by bill of information with filing false public records, a violation of La.R.S. 14:133(A) and 14:24, and with perjury, a

-1-

violation of La.R.S. 14:123 and 14:24. A motion for the appointment of a sanity commission was filed by Defendant. After a hearing, the motion was denied.

Defendant pled guilty to the charges in exchange for the State's agreement not to charge him as a habitual offender and that the sentences would run concurrently with each other. Defendant was subsequently sentenced to serve five years at hard labor for each conviction, to be served concurrently with each other, but consecutively to his prior sentence in an unrelated docket number. Defendant did not file a motion to reconsider his sentences.

Defendant is now before this court on appeal, asserting that his convictions violate double jeopardy and that the trial court erred in denying his motion for a sanity commission. After reviewing the record, we find Defendant's conviction and sentence for perjury should be affirmed; but his conviction and sentence for filing false public records should be reversed.

**ASSIGNMENT OF ERROR NO. 1**

By this assignment of error, Defendant argues the double jeopardy clauses of the federal and state constitutions protect against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969). Because his guilty plea for creating a false affidavit was taken under both perjury and filing a false public record, Defendant maintains his convictions violate double jeopardy. As such, Defendant argues his single act of filing a false affidavit cannot be the basis for two felony charges.

In opposition to Defendant's appeal, the State argues Defendant waived his right to appeal his convictions and sentences when he voluntarily entered his guilty plea, citing *State v. Pickens*, 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writ denied*, 99-1577 (La. 11/5/99), 751 So.2d 232, *writ denied*, 01-2178 (La. 4/19/02),

813 So.2d 1081. The State maintains Defendant read and signed a plea agreement which contained both charges and which expressly waived an appeal of his convictions and sentences.

As noted in *State v. Crosby*, 338 So.2d 584, 588 (La.1976), "[a] defendant normally waives any non-jurisdictional error by his plea of guilty." An unqualified plea of guilty, however, does not preclude review of jurisdictional defects, those which do not permit a defendant's conviction of the offense charged. According to *Crosby*, a conviction which represents double jeopardy, is an example of a jurisdictional defect. As such, we will review this assignment of error to determine if Defendant's convictions constitute double jeopardy.

In *State v. Barton*, 02-163, pp. 17-18 (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, 1201-02, *writ denied*, 03-3012 (La. 2/20/04), 866 So.2d 817, the court summarized the two tests used by Louisiana courts in examining violations of double jeopardy as follows:

> The "distinct fact" test, commonly referred to as the *Blockburger* test, is taken from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) as follows:
>
>> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
>
> *Accord, State v. Knowles*, 392 So.2d 651, 654 (La.1980).
>
> The second test is the "same evidence" test. In *State v. Steele*, 387 So.2d 1175, 1177 (La.1980), the Louisiana Supreme Court explained that test as follows:
>
>> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for

conviction, not all the evidence introduced at trial. . . .

The "same evidence" test is broader than *Blockburger*, "the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." *State v. Steele*, 387 So.2d at 1177. Although the Louisiana Supreme Court has accepted both the *Blockburger* test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. *State v. Miller*, 571 So.2d 603, 606 (La.1990).

The offense of filing or maintaining false public records is defined in La.R.S. 14:133, which reads in pertinent part:

A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:

(1) Any forged document.

(2) Any wrongfully altered document.

(3) Any document containing a false statement or false representation of a material fact.

Perjury is defined in La.R.S. 14:123, which reads in pertinent part:

A. Perjury is the intentional making of a false written or oral statement in or for use in a judicial proceeding, any proceeding before a board or official, wherein such board or official is authorized to take testimony, or before any committee or subcommittee of either house or any joint committee or subcommittee of both houses of the legislature. In order to constitute perjury the false statement must be made under sanction of an oath or an equivalent affirmation and must relate to matter material to the issue or question in controversy.

B. It is a necessary element of the offense that the accused knew the statement to be false, but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false.

To avoid double jeopardy under *Blockburger*, each provision must require proof of an additional fact which the other does not. In the instant case, perjury requires that the false statement be made under oath and be related to a material issue in the judicial proceeding. These elements are not required for filing false public

-4-

records. As such, Defendant's convictions would not constitute double jeopardy using the *Blockburger* analysis.

Under the same evidence test, however, the evidence required to support a finding of guilt of one crime must not also support conviction of the other. In the instant case, the conception and subsequent utilization of Ms. Brimzy's affidavit was used to convict the Defendant of filing false public records and to convict him of perjury. Although the elements of the offenses are not identical, the evidence needed to convict Defendant of the offenses is the same. Thus, Defendant's convictions constitute double jeopardy using the same evidence test.

As noted by this court in *State v. Pierce*, 01-94, p. 29 (La.App. 3 Cir. 10/31/01), 799 So.2d 732, 750, *writ denied*, 01-3312 (La. 1/10/03), 834 So.2d 427, "To remedy a violation of double jeopardy, this court must vacate the conviction and sentence of the less severely punishable offense and affirm the conviction and sentence of the more severely punishable offense. *State v. Doughty*, 379 So.2d 1088 (La.1980); *State ex rel. Adams v. Butler*, 558 So.2d 552 (La.1990)." *See also State v. Cox*, 07-774 (La.App. 3 Cir. 3/4/09), 4 So.3d 998, *writ denied*, 08-602 (La. 9/4/09), 17 So.3d 948. In the instant case, a conviction of perjury is the more severely punishable offense, which carries a maximum hard labor sentence of five years or a maximum fine of $10,000, or both. La.R.S. 14:123(C)(3). Filing of false public records carries a maximum possible sentence of five years, with or without hard labor, or a fine of not more than $5,000, or both. La.R.S. 14:133(C). Accordingly, Defendant's conviction and sentence for perjury is affirmed and his conviction and sentence for filing of false public records is reversed .

### ASSIGNMENT OF ERROR NO. 2

By this assignment of error, Defendant argues the trial court erred in not

ordering a sanity commission despite objective medical evidence that he suffered from a neurological deficit and impaired memory. Further, Defendant contends the trial court unfairly considered his criminal conduct as somehow showing that he had no mental health problems.

On March 26, 2008, Defendant, while incarcerated in the Natchitoches Parish Detention Center, was arraigned by video. Defendant waived arraignment and entered a plea of not guilty to the charges. After the trial court advised him of his right to a jury trial and the date set for trial, Defendant advised the trial court he had no memory of what was going on and asked how he could get some kind of mental or physical help.

That same day, counsel for Defendant filed a "Motion for Psychiatric Examination," stating he believed that Defendant suffered a mild stroke while incarcerated on or about the second week of March, was held at LSU Medical Center for two days, and then returned to prison. According to defense counsel, when he spoke with Defendant on March 14, 2008, Defendant did not appear to have any recollection of his pending charges or why he was incarcerated, and could not intelligently communicate with defense counsel. A hearing on the motion was ordered to be held on April 16, 2008.

At the hearing, a three-page discharge summary from LSU Medical Center, dated March 13, 2008, was admitted into evidence. The discharge diagnoses were lumbar radiculopathy and neuropathy. The report indicates Defendant was transferred from another hospital to LSU Medical Center complaining of right-sided numbness and weakness and a throbbing headache all over his head. Defendant also complained of stabbing, substernal chest pain, that radiated to his back. Defendant stated he was unable to remember why he was in the hospital and that he thought the

year was 1998. The laboratory data from the transferring hospital was reported to be within normal limits. His physical exam on admission reflects that he was disoriented to time, only, was cooperative with good eye contact, but "clearly unreliable." Although Defendant's neurological exam was normal, he reported decreased touch and pain sensation on the right upper and lower extremities and was unable to walk due to his weakness and lower back pain. The physician reported, again, that "the patient was unreliable on examination."

During the course of his hospitalization, Defendant was admitted to neurology. An MRI of the brain and lumbar spine, a carotid doppler and echocardiogram were all normal. After showing remarkable improvement, Defendant was discharged to be followed in the neurosurgery outpatient clinic.

At the hearing, the trial court heard the testimony of Defendant's sister, Aline Slaughter. In its written ruling denying Defendant's motion, the trial court referred to Ms. Slaughter's testimony about the Defendant's mental status during his hospitalization. According to Ms. Slaughter, when she went to visit Defendant with his wife, Patricia Black, Defendant believed that Mrs. Black was his girlfriend, not his wife. Also, the Defendant thought the year was 1998, and that his deceased father was still alive. Following his discharge, she stated she visited him twice and believed his mental status had not changed. According to Ms. Slaughter, Defendant continued to believe his father was alive. Ms. Slaughter indicated, however, that Defendant knew his wife and that he had the mental wherewithal to call Ms. Slaughter at home.

The trial court also considered the discharge summary regarding the Defendant's mental status, his negative test results, and his significant improvement during his hospital stay. The trial court noted that no other evidence was introduced.

In reaching its ruling, the trial court referred to La.Code Crim.P. arts. 641 and

643. Louisiana Code of Criminal Procedure Article 641 reads, "Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." Louisiana Code of Criminal Procedure Article 643 provides:

> The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. Prior to the ordering of any such mental examination, the court shall appoint counsel to represent the defendant if he has not already retained counsel.

The trial court also relied on this court's ruling in *State v. Normand*, 04-840, pp. 3-4 (La.App. 3 Cir. 12/15/04), 896 So.2d 98, 100, *writ denied*, 05-231 (La. 5/6/05), 901 So.2d 1094, which explains:

> The appointment of a sanity commission "is not a perfunctory matter or a ministerial duty of the trial court nor is it guaranteed to every accused in every case." *State v. Nix*, 327 So.2d 301, 323 (La.1975); *State v. Sepulvado*, 93-2692 (La.4/8/96), 672 So.2d 158. The burden of proof lies with the defendant. The defendant must show "by a clear preponderance of the evidence reasonable grounds for the trial judge to believe he is mentally deficient." *State v. Cyriak*, 96-661, p. 8 (La.App. 3 Cir. 11/6/96), 684 So.2d 42, 47. Moreover, "[t]he fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant." *State v. Lott*, 574 So.2d 417, 424 (La.App. 2 Cir.), *writ denied*, 580 So.2d 666 (La.1991), *affirmed after remand*, 27,849 (La.App. 2 Cir. 4/3/96), 671 So.2d 1182. The trial court has great discretion in ruling on a determination of competency, and its decision will not be overturned on appeal absent an abuse of discretion. *State v. Comeaux*, 514 So.2d 84 (La.1987); *State v. Lowenfield*, 495 So.2d 1245 (La.1985).

The trial court then concluded "[t]hat while there was some evidence of earlier mental confusion on defendant's part, defendant has not proven that as of the time of the hearing, he lacked the mental capacity to proceed as defined in Article 641."

On appeal, Defendant contends the trial court imposed the wrong burden on him, testing his request for a Sanity Commission as if it required him to prove incapacity. However, considering the limited evidence presented at the hearing, we

find Defendant did not meet his burden of showing, by a clear preponderance of the evidence, reasonable grounds for the trial court to believe he was mentally deficient to proceed. Even if the trial court believed that Defendant suffered from some sort of medical event in March of 2008, which rendered him incapable of proceeding, there was no evidence that the Defendant suffered from any mental deficiency at the time of the hearing. Accordingly, this assignment of error is without merit.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence for perjury is affirmed. His conviction for filing false public records is reversed.

**AFFIRMED IN PART; REVERSED IN PART.**