STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-1317

STATE OF LOUISIANA

VERSUS

ALEX P. PAPILLION

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 3987-07, Section G
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Oswald A. Decuir, James T. Genovese, and Shannon J. Gremillion, Judges.

AFFIRMED.

Mark O. Foster
Louisiana Appellate Project
Post Office Box 2057
Natchitoches, Louisiana 71457-2057
(318) 572-5693
COUNSEL FOR DEFENDANT/APPELLANT:
    Alex P. Papillion


Alex P. Papillion
D.O.C. #182589-CBB
Louisiana State Penitentiary
Angola, Louisiana 70712
IN PROPER PERSON

**John F. DeRosier**
**District Attorney – Fourteenth Judicial District**
**Carla S. Sigler – Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Alex P. Papillion, after having been convicted by a jury of theft of over $500.00, attempted disarming of a peace officer, and the responsive verdict of simple battery, was billed as a habitual offender, adjudicated as a third felony habitual offender, and was sentenced accordingly. He appeals his convictions, habitual offender adjudication, and sentences. For the reasons that follow, we affirm Defendant's convictions, habitual offender adjudication, and sentences.

## FACTS AND PROCEDURAL HISTORY

On the evening of December 8, 2006, between 7:45 and 8:00 p.m., Defendant attempted to steal a car parked at a corner gas station. He then fled on foot to a neighboring apartment complex where he successfully stole a vehicle.

Following a high-speed chase with the police, Defendant crashed the vehicle into a tree. He exited the vehicle, and a foot chase ensued through a nearby apartment complex. The pursuit ended at the top of a flight of stairs where Defendant indicated to a pursuing female officer that he surrendered. As the officer was about to handcuff Defendant, he went for her gun. After the officer broke Defendant's grip from her gun, he pushed her, causing her to fall backwards down the stairs. Defendant descended the stairs and continued to struggle with the officer in an attempt to get her gun. When a second officer arrived on the scene, Defendant was apprehended with the assistance of a canine.

On February 9, 2007, Defendant was charged by bill of information as follows: Counts 1 and 2 – theft of over $500.00, violations of La.R.S. 14:67; Count 3 – attempted disarming of a police officer,[1] a violation of La.R.S. 14:34.6 and 14:27; and

---

[1]Though the bill of information reads "police officer," the statute states "peace officer"; therefore, all references to this statute throughout this opinion will refer to "peace officer."

Count 4 – second degree battery, a violation of La.R.S. 14:34.1. On March 9, 2010, Count 1 was *nolle prosequied*, and the matter proceeded to trial. On March 12, 2010, Defendant was found guilty as charged on Counts 2 and 3 and also found guilty via responsive verdict of simple battery on Count 4.

The State subsequently charged Defendant as a habitual offender on May 10, 2010. Following a hearing on June 28, 2010, the trial court found Defendant to be a third felony habitual offender. As such, Defendant was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, for attempting to disarm a peace officer, to fifteen years at hard labor for theft over $500.00, and to six months in the parish jail for simple battery. The sentences were ordered to run concurrently with each other. Defendant filed pro se motions to reconsider his sentences, which were denied.

## ASSIGNMENTS OF ERROR

Defendant is now before this court on appeal, asserting two assignments of error through appellate counsel: 1) that his convictions for attempted disarming of a peace officer and simple battery violated his constitutional protection against double jeopardy; and 2) that the trial court erred in deferring its ruling on his pro se post-trial motions until after his habitual offender adjudication and sentencing.

Defendant has also filed a pro se brief and a supplemental pro se brief setting forth the following pro se assignments of error:

1. The trial court failed to comply with La.R.S. 5:529.1(D)(3), which makes the habitual offender adjudication unconstitutional as it applies to Defendant for sentencing enhancement.

2. The trial court erred when it allowed the introduction of unrelated other crimes evidence through the testimony of Ms. Laticia Fontenot and Ms. Shellie Fontenot, which prejudiced Defendant.

2

3. The evidence was insufficient to find Defendant guilty of count one, theft over $500.00; count two, attempting to disarm a peace officer; and guilty of the responsive verdict of simple battery.

4. Defendant contends that the trial court erred when it did not secure the attendance of his witness by subpoenas.

5. Defendant contends that a conflict between him and his court appointed counsel before and during the trial constitutes a violation of his rights guaranteed by the Sixth Amendment to the United States and Louisiana Constitutions.

6. Trial counsel was ineffective by failing to object to the exclusion of the responsive verdicts.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no actionable errors patent.

### *PRO SE ASSIGNMENT OF ERROR NO. 3:*

In this assignment of error, Defendant argues that the evidence was insufficient to find him guilty of theft over $500.00, attempting to disarm a peace officer, and simple battery. This assignment of error is addressed first in the event Defendant is entitled to an acquittal. *State v. Hearold*, 603 So.2d 731 (La.1992).

> When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.

*Id*. at 734.

The analysis for a claim of insufficient evidence is well-settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant limits his actual argument to whether the evidence was sufficient to prove his identity as the perpetrator of all three offenses. As such, we will limit review of the evidence to the issue of identity.

In considering the issue of proof of identify, our Louisiana Supreme Court in *State v. Neal*, 00-674, p. 11 (La. 6/29/01), 796 So.2d 649, 658, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002), stated:

As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. *See State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12. . . . The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the "fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law." *Mussall*, 523 So.2d at 1310 (La.1988).

At trial, Sherman Edwards, Jr., the owner of the vehicle involved in the theft herein, testified that he did not see the person's face who had taken his car "because

everything was moving so fast[.]" The next time he saw his car, it had crashed into a tree at an apartment complex. Officers took him to the scene to identify his car. Lastly, Mr. Edwards identified photographs of his wrecked car that were introduced into evidence.

Officer Rebecca Willson (now Reed), of the Lake Charles Police Department, testified that on the night in question, she was dispatched to investigate an attempted carjacking at the In & Out Mini Mart. While en route to the scene, she was about to turn right at an intersection when she saw a small, silver car travel through the intersection at a high rate of speed and fail to stop at the red light. Officer Willson was aware of the reported carjacking and asked for a description of the stolen vehicle. From the description she received, Officer Willson determined that the speeding vehicle was the vehicle that had been stolen.

Officer Willson then pursued the vehicle until it struck a tree in a nearby apartment complex. A foot chase ensued through the apartment complex and up a flight of stairs with Officer Willson never losing sight of the suspect. During a scuffle over her weapon, the suspect pushed Officer Willson, and she fell down the flight of stairs. The suspect followed Officer Willson down the stairs and continued the struggle for her gun. Corporal Jeffrey Atkinson arrived on the scene with a canine while the suspect was still standing over Officer Willson. As he approached Officer Willson and the suspect, the suspect began to walk away out of Officer Willson's view.

Lastly, Officer Willson identified photographs of the vehicle that was driven and crashed by Defendant. Officer Willson also identified Defendant in court as the person she chased up the stairs and who was involved in the altercation.

5

Corporal Atkinson testified that when he was responding to the report of an attempted carjacking, he was flagged down by Mr. Edwards, who reported that his car had just been stolen. Corporal Atkinson got a description of the vehicle and began driving around to see if he could locate the vehicle. When he heard Officer Willson call out that she may have the vehicle, Corporal Atkinson headed in her direction. When he arrived at the apartment complex, he got a visual of Officer Willson laying on the ground with a man standing over her. Corporal Atkinson got out of his vehicle and yelled at the man to stop and move away from her. The suspect slowly stood up from Officer Willson and started to walk away. Corporal Atkinson instructed the suspect to stop, or he was going to release his canine; the suspect continued to walk away around the side of the building. Corporal Atkinson released the canine to apprehend the suspect, and he followed the canine around the side of the building to where the canine had circled the suspect. Upon command, the canine then grabbed the suspect's right arm and took him to the ground. Corporal Atkinson identified Defendant in court to be the person his canine secured that evening.

Following his apprehension, Defendant was taken back to the In & Out Mini Mart and was identified by Laticia Fontenot and Shellie Fontenot as the man who attempted to steal Shellie's vehicle and then fled on foot to the nearby apartment complex.

Considering the evidence before this court, we find the State proved that Defendant was in fact the person who stole Mr. Edward's car, attempted to disarm Officer Willson, and committed a battery upon her. Defendant was positively identified by Officer Willson as the person who was driving the vehicle she was pursuing, who tried to take her weapon, and who physically assaulted her. Combined

6

with the evidence that the vehicle driven by Defendant was the vehicle stolen from Mr. Edwards shortly before it was first seen by Officer Willson, we find the jury could readily conclude that it was Defendant who stole Mr. Edwards' vehicle. Further, there was no evidence presented at trial to suggest than anyone other than Defendant had stolen Mr. Edward's vehicle.

Additionally, Corporal Atkinson's identification of Defendant as the man seen standing over Officer Wilson and who was subsequently captured, and the testimony of Laticia Fontenot and Shellie Fontenot regarding Defendant's attempted theft of Shellie's vehicle just minutes before the theft of Mr. Edwards' vehicle, lends further support to Officer Willson's identification of Defendant as the perpetrator of all three crimes. Accordingly, we find that the evidence, viewed in a light most favorable to the prosecution, is sufficient to uphold Defendant's convictions, and thus, this assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 1:

In this assignment of error, Defendant argues that his convictions for both attempted disarming of a peace officer and the underlying battery constitute double jeopardy. Defendant maintains that the offense of disarming of a peace officer is a subpart of La.R.S. 14:34, aggravated battery, and thus is a battery offense. As such, Defendant contends that the State must first prove that a battery or attempted battery occurred to prove disarming of a peace officer. Although Defendant did not raise the issue of double jeopardy at trial, a claim of double jeopardy may be raised at any time, and thus, the matter is properly before this court for the first time on appeal. La.Code Crim.P. art. 594.

7

Louisiana Code of Criminal Procedure Article 591 provides, in pertinent part: "No person shall be twice put in jeopardy of life or liberty for the same offense . . . ." Relying on this court's opinion in *State v. Pierce*, 01-94 (La.App. 3 Cir. 10/31/01), 799 So.2d 732, *writ denied*, 01-3312 (La. 1/10/03), 834 So.2d 427, Defendant asserts that appellate courts have long held that if proof of one crime is essential to the proof of a greater crime, convictions for both crimes constitute double jeopardy.

In *Pierce*, 799 So.2d at 749, this court reviewed the applicable law in cases involving double jeopardy:

> Both the United States and the Louisiana Constitutions protect individuals against twice being put in jeopardy for the same offense. One of the fundamental guarantees is protection against multiple punishment for the same offense. *State v. Mayeux*, 498 So.2d 701 (La.1986). Louisiana courts have applied two distinct tests to determine whether offenses are the same for double jeopardy purposes. In *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court set out the following test: "[. . .] where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two different offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *See also State v. Coody*, 448 So.2d 100 (La.1984); *State v. Vaughn*, 431 So.2d 763 (La.1983); and *State v. Doughty*, 379 So.2d 1088 (La.1980).

> The other standard used by the courts is the "same evidence test" as follows: "If the evidence required to support a finding of guilty of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial." *See also Coody*, 448 So.2d 100; *Vaughn*, 431 So.2d 763; and *State v. Steele*, 387 So.2d 1175.

> In a single trial, as in this case, the legislative intent regarding multiple punishment must also be examined. *State v. Smith*, 95-0061 (La.7/2/96); 676 So.2d 1068. In *Smith*, the Louisiana Supreme Court held that separate convictions and sentences for manslaughter and feticide, which involved the killing of different victims, did not violate double jeopardy. The Court reasoned that the two statutes were aimed at different evils, and involved different elements and required different proof.

8

In the instant case, Defendant was convicted of attempted disarming of a peace officer, which

> is committed when an offender, through use of force or threat of force, and without the consent of the peace officer, takes possession of a firearm from the person of a peace officer or from an area within the peace officer's immediate control, when the offender has reasonable grounds to believe that the victim is a peace officer acting in the performance of his duty.

La.R.S. 14:34.6(A)(1). Defendant was also convicted of simple battery. Battery is defined as "the intentional use of force or violence upon the person of another[.]" La.R.S. 14:33.

Applying the *Blockburger* and same evidence tests, we find that Defendant's convictions do not constitute double jeopardy. Under *Blockburger*, simple battery requires proof of the use of force upon another person. Disarming of a peace officer does not require proof of the use of force upon another person, but instead requires the use or threat of force in taking possession of a firearm from a peace officer's person or an area within the peace officer's immediate control, without the peace officer's consent, when the offender has reasonable grounds to believe that the victim is a peace officer acting in the performance of his duty. These offenses clearly require proof of an additional fact or act which the other does not.

Using the same evidence test, we likewise find that separate incidents occurred that support Defendant's convictions for both offenses. Defendant first attempted to disarm Officer Willson following a foot chase through a nearby apartment complex. Just before reaching the top of some stairs in the apartment complex, Defendant indicated to Officer Willson that he had surrendered, and he then sat down on the platform at the top of the stairs. Officer Willson, who was located two to three steps below Defendant, instructed him to lie down and put his hands behind his back.

9

Defendant complied, but when Officer Willson reached for her handcuffs, Defendant sprang up and grabbed the gun in her holster. Officer Willson then put both of her hands on her weapon, and the two began struggling. Officer Willson began twisting and was able to get Defendant's hands off her weapon. Up to this point, there was no evidence to indicate that a battery had occurred, only that Defendant attempted to disarm Officer Wilson. After Officer Willson freed her weapon from Defendant's grip, he then committed a battery upon her by pushing her shoulders, causing her to lose her balance and fall backwards down the flight of stairs to the ground.

The record includes additional evidence of both a battery and further attempts to disarm Officer Willson. Defendant continued to pursue Officer Willson after she landed on the ground and used physical force on her person in an attempt to take her weapon. Defendant then started kicking Officer Willson to roll her off the weapon, but was unsuccessful, thereby committing both a battery and an attempt to disarm Officer Willson.

Next, Defendant stood over Officer Willson and grabbed her rig belt. According to Officer Willson, Defendant was trying to rip it off her and to get her to turn over. Defendant continued to yank on Officer Willson's rig belt until Corporal Atkinson arrived. At this point, the jury could have concluded that Defendant's use of force did not amount to a battery on Officer Willson's person, but was an attempt to disarm her. With individual incidents of both a battery and an attempt to disarm a peace officer, and using the same evidence test, Defendant's convictions do not violate double jeopardy.

For the reasons stated herein, we find that Defendant's convictions for attempt to disarm a peace officer and simple battery do not violate the double jeopardy

10

prohibitions in the United States and Louisiana Constitutions. Accordingly, this assignment of error is without merit, and Defendant's convictions are affirmed.

## ***ASSIGNMENT OF ERROR NO. 2:***

In this assignment of error, Defendant argues that the trial court erred when it deferred ruling on Defendant's pro se post-trial motions regarding ineffective assistance of counsel (Motion for New Trial) and defense counsel's Motion to Withdraw until after the habitual offender adjudication and sentencing. Defendant complains that the trial court chose to defer its ruling on the Motion to Withdraw until the case was over so that defense counsel, Mr. Todd Clemons, would continue to represent him, even though the Motion to Withdraw was received prior to the habitual offender hearing held on June 28, 2010. Defendant contends that the trial court's deferral in ruling on the motion was a constitutional error, requiring the reversal of his sentences and convictions.

In support of his argument, Defendant refers to *State v. Brown*, 03-897 (La. 4/12/05), 907 So.2d 1, *cert. denied*, 547 U.S. 1022, 126 S.Ct. 1569 (2006), wherein the trial court granted defense counsel's motion to withdraw filed prior to trial during a status conference. However, other than the fact that a motion to withdraw was filed in both cases, the facts in *Brown* are not similar to those in the instant case, and thus, the *Brown* case is readily distinguishable and provides no guidance on the issue.

Defendant was convicted of the offenses herein on March 12, 2010. At the conclusion of trial, the State requested additional time to file a habitual offender bill. Arraignment on the habitual offender bill was scheduled for April 29, 2010. Mr. Clemons, however, was not present at the hearing that day, and the arraignment was rescheduled. The State indicated that it had not yet filed the habitual offender

11

bill. A habitual offender bill of information was then filed on May 10, 2010, asserting that Defendant was a third felony habitual offender.

Also on May 10, 2010, Defendant filed a pro se Motion for New Trial, arguing in part that his defense counsel was ineffective. Defendant then wrote a letter to the trial court judge dated May 16, 2010. In his letter, Defendant complained of ineffective assistance of trial counsel and asserted various violations of his rights before and during trial.

Next, the following post-trial motions were filed by Defendant:

1. Pro se Motion for Written Opposition to the State's Information in the Habitual Offender's Bill filed on May 25, 2010.

2. Two pro se Motions to Quash filed on June 1, 2011.

3. Pro se Motion to Quash Proceedings, Sentencing Due to Unconstitutional Issues and Motion to Suppress filed on June 28, 2010.

4. Pro se Motion to Quash Proceedings, Sentencing Due to Unconstitutional Issues and Motion to Suppress filed on June 29, 2010 (identical motions).

On June 28, 2010, a hearing was held with regard to the habitual offender bill filed by the State, Mr. Clemons' Motion to Withdraw, and Defendant's Motion for New Trial. According to the State, the habitual offender bill intended to establish that Defendant was a third felony offender, and thus, he was subject to an enhanced sentence. The State then proceeded with its case, and the trial court found Defendant to be a third felony offender. Mr. Clemons objected to the trial court's ruling, and the trial court noted same, "specifically as to the St. Tammany conviction date versus the information for the habitual offender adjudication." The trial court did not sentence Defendant at that time, noting that other motions were still pending.

The trial court then asked Mr. Clemons if he was going to assist Defendant with regard to his Motion for New Trial. After a conversation held off the record,

Mr. Clemons informed the trial court that he would not be assisting Defendant in his pro se motions. The trial court then confirmed for the record that Mr. Clemons had asked to be allowed to withdraw as counsel. A formal motion was not filed at that time.

Before taking up Defendant's pro se Motion for New Trial, the trial court asked Defendant if he objected to Mr. Clemons withdrawing as his attorney. The Defendant responded:

DEFENDANT PAPILLION:

Of course, Your Honor. I thought he was with me all the way through, but I mean –

THE COURT:

It says, "was retained to represent Mr. Papillion through trial and sentencing if necessary;" and, since he is -- I am gonna -- That does make sense. I am going to withhold that, Mr. Clemons. I can release you from his pro se motions since you don't adopt those, but I'm not going to sign the withdrawal until we actually formalize the sentencing because I believe that is probably part of your retention.

MR. CLEMONS:

Okay. Judge, that's why I made it clear in my motion that that was part of my retention to represent him through sentencing. Just on things that transpired since that time I felt and I still feel it's in his best interest to have somebody who could advocate from this point going forward on his behalf and also because Mr. Papillion is indigent, and at some point hopefully the Court is going to appoint someone to take over this matter moving forward. I just thought this would be a good transition period to do that, Your Honor, but I have no problem with staying on until he gets sentenced.

THE COURT:

Well, since that is in part of the motion, I think I would be probably jumping the gun, so to speak, as to sign the Motion to Withdraw at this point.

13

MR. CLEMONS:

No problem, Judge. As far as withdrawing for today -- I mean leaving for today to go to my office?

THE COURT:

I understand you have not adopted the pro se motions that were filed by the defendant, therefore you may leave if you so desire.

MR. CLEMONS:

Thank you, Judge.

(Mr. Clemons exits courtroom)

Defendant then proceeded to present his case on his Motion for New Trial. After determining that the motion involved claims of ineffective assistance of counsel, issues of trial strategy, and pretrial issues, the trial court concluded that the motion did not set forth any grounds that would entitle Defendant to a new trial and, thus, denied the motion.

On July 6, 2010, the trial court took up Defendant's Motions to Quash prior to sentencing. Again, the motions were not adopted by defense counsel. With regard to the first Motion to Quash that involved a pretrial matter, the trial court ruled that it was not filed timely and, thus, was procedurally inappropriate. The second motion was also denied, as Defendant did not allege any particularities regarding his allegation that exculpatory evidence existed. Defendant was then sentenced while represented by Mr. Clemons.

After Defendant was sentenced, the trial court granted Mr. Clemons' oral Motion to Withdraw as counsel of record. In Mr. Clemons' written motion filed that same day, he stated that Defendant "was an extremely difficult client to represent for a multitude of reasons[,]" but "despite the problems, he was well represented." He

added that on June 24, 2010, he received from the trial court copies of pro se motions filed by Defendant, along with a letter to the trial court judge dated May 16, 2010. Mr. Clemons stated that Defendant's letter made many false assertions about his representation of Defendant, and it was at least the second time Defendant had written to the trial court judge during his representation of Defendant, despite being admonished not to do so after the first occasion. Further, Mr. Clemons stated that Defendant's insistence on filing pro se motions made it very difficult to effectively represent him.

Considering the record herein, we find that the trial court did not err in deferring its ruling on Mr. Clemons' oral Motion to Withdraw. The hearing transcript of June 28, 2010, indicates an agreement by both parties to defer a ruling on Mr. Clemons' oral Motion to Withdraw until sentencing was concluded. When given the opportunity to object, Defendant clearly expressed his desire for Mr. Clemons to continue representing him through sentencing. Likewise, Mr. Clemons agreed that the motion would be more timely considered upon the conclusion of sentencing.

Additionally, the record does not support Defendant's assertions that he did not argue the merits of his pro se Motion for New Trial wherein he asserted ineffective assistance of counsel. The trial court concluded that the Motion for New Trial did not raise a valid claim upon which a new trial could be granted. Further, Defendant is not prevented from raising any and all claims of ineffective assistance of counsel in an application for post-conviction relief.

For the reasons stated herein, we find no merit to this assignment of error.

### PRO SE ASSIGNMENT OF ERROR NO. 1:

In this assignment of error, Defendant argues that the trial court failed to

15

comply with La.R.S. 15:529.1(D)(3) when it did not file written findings as to the multiple offender adjudication. Louisiana Revised Statues 15:529.1(D)(3) (emphasis added) reads:

> (3) When the judge finds that [a defendant] has been convicted of a prior felony or felonies or adjudicated a delinquent as authorized in Subsection A, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted or adjudicated, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. *The court shall provide written reasons for its determination.* Either party may seek review of an adverse ruling.

In *State v. Breaux*, 00-236 (La.App. 5 Cir. 8/29/00), 767 So.2d 904, *writ denied*, 00-2874 (La. 6/29/01), 794 So.2d 808, the court found that the oral reasons given for finding the defendant to be a third felony offender, which were transcribed and formed part of the record, were sufficient to comply with the statutory requirement in La.R.S. 15:529.1(D)(3). Also, in *State v. Neal*, 00-41 (La.App. 5 Cir. 5/30/00), 762 So.2d 281, the court found that the trial court's failure to supply written reasons for its habitual offender determination was harmless error, because the trial court's reasons were transcribed and were a part of the record. *See also State v. James*, 41,069 (La.App. 2 Cir. 8/23/06), 938 So.2d 1191.

Likewise, we find that the trial court's oral reasons given for finding Defendant to be a third felony offender in the instant case, which were transcribed and form part of the record, satisfy the statutory requirement of providing written reasons for the trial court's habitual offender determination and that the trial court's failure to provide written reasons constituted harmless error. Accordingly, this assignment of error has no merit.

## PRO SE ASSIGNMENT OF ERROR NO. 2:

In this assignment of error, Defendant argues that the trial court erred when it allowed unrelated other crimes evidence through the testimony of Laticia Fontenot and Shellie Fontenot. In support of his argument, Defendant refers to La.Code Evid. art. 404(B)(1) and asserts that the court may not admit evidence of other crimes to show that a defendant is a man of bad character who has acted in conformity therewith. Louisiana Code of Evidence Article 404(B)(1) reads:

> B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412 [victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Defendant adds that even if the evidence is independently relevant, it must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

On January 22, 2010, the State filed a Notice of Intent to Offer Other Crimes Evidence Pursuant to Louisiana Code of Evidence Article 404(B). Pursuant to *State v. Prieur*, 277 So.2d 126 (La.1973), a hearing was held on the first day of trial, March 9, 2010, wherein the parties discussed the testimony of Laticia Fontenot and Shellie Fontenot. The State argued that the testimony of these two women was admissible because it related to the conduct that constituted an integral part of the act or transaction that was the subject of the trial. The State maintained that a *Prieur*

17

notice was filed out of an abundance of caution. The trial court then indicated that it needed to hear the substance of the witnesses' testimony to determine if the evidence fell within the general exception of *Prieur*.

The State then proceeded to provide the facts of which it expected the women to testify. The State indicated that both Laticia Fontenot and Shellie Fontenot were the occupants of a vehicle that was parked at the In & Out Mart at 7:54 p.m. on the same date and prior to the commission of the instant offenses. Defendant was identified as an individual who entered a vehicle occupied by Laticia while the owner, Shellie, was inside the store. Defendant then attempted to start it. Laticia did not give Defendant permission to enter the vehicle and ended up in a scuffle with Defendant while trying to get the key out of the ignition. Laticia was able to remove the key from the ignition and stop Defendant from driving away.

When Defendant exited the vehicle, he ran less than a block away to a nearby apartment complex where, moments later, he successfully stole Mr. Edwards' vehicle. The State concluded that the basis for the testimony was to show that the incidents happened on the same date and very close in time. The trial court confirmed that no charges arose out of Defendant's actions with Laticia and Shellie. Counsel for Defendant stated that he wanted to wait and hear their testimony before giving the trial court his position on the issue. The State then asked if both witnesses could be called. Defense counsel did not object but requested that they be placed under the rule of sequestration if the State was going to call both women.

Laticia testified first about the incident involving Defendant that occurred just minutes before the theft in the instant matter. Around 7:45 to 8:00 p.m., Laticia and four other women were on their way to Beaumont, Texas, to eat dinner, and they

stopped at the In & Out Mart to get money from the automatic teller machine located inside the store. Everyone went inside the store except Laticia, who remained seated in the center of the backseat. The keys were in the ignition, but the car was not running. Laticia was talking on her phone when a man opened the door and sat down in the vehicle. Laticia asked what he was doing, and he told her to "Just wait up." The two began to struggle over the set of keys in the ignition. Laticia was able to pull the keys from the ignition, but the man grabbed the keys from her.

Laticia then described how she exited the vehicle with the man remaining in the driver's seat. Soon thereafter, Shellie exited the store and confronted the man. Shellie jerked her keys and cigarettes from his hands, and the man took off running towards a nearby apartment complex. After police arrived, Laticia and her party were instructed to wait at the scene because another 911 call had come in with a possible lead on the perpetrator. About thirty to forty minutes later, police returned to the store with Defendant in the backseat of the vehicle. Laticia, the four women in her party, and the store clerk all identified Defendant as the perpetrator. Laticia then identified Defendant in court.

On cross-examination, Laticia was asked about the identification process. Laticia stated that Defendant did not get out of the vehicle. After the women identified him, the police took them back to Shellie's vehicle and instructed them to fill out an incident report. Laticia was never shown a photo line-up.

The State then called Shellie to testify. In response, defense counsel stated he would stipulate to what Shellie would testify to and that he did not see the need to have another witness. The State then argued that because of the proximity in time and location to the actual theft, the evidence was an integral part of the act or

19

transactions that were a part of the proceeding at hand. The State maintained that the witnesses exhibited for the trial court an ability to identify Defendant as the perpetrator who had carried out acts of attempted theft of an automobile which was very similar in scope to the act that was committed moments later at the neighboring apartment complex. The State added that the evidence demonstrated Defendant's intent to steal an automobile on the evening of December 8, 2006, and established his identity as the person involved in the subsequent felonies at issue. Further, the State asserted that the evidence went toward the absence of any mistake or accident as to Defendant's intent that evening with regard to stealing an automobile. Accordingly, the State urged that the probative value outweighed any prejudicial effects.

In response, defense counsel argued that the evidence was not part of the same act or transaction but was a separate alleged crime. He conceded that the alleged offense occurred in very close proximity to the offense for which Defendant was charged but was not an integral part of the offenses. Defense counsel maintained that using the balancing test of La.Code Evid. art. 403, there was a substantial chance that Defendant would be unfairly prejudiced by the other crimes evidence and that the jury would be confused as to which offenses he was on trial for. Defense counsel conceded that the evidence had probative value with regard to intent and possibly identity. He urged, however, that the prejudice of the jury hearing about another alleged crime for which he was not on trial clearly outweighed the probative value of the evidence.

The State responded that the testimony did not show that an attempted theft occurred and then thirty minutes later the instant theft occurred. The State stressed that the evidence indicated that about thirty minutes after the alleged offense

20

occurred, Defendant had been apprehended and brought back to the store for identification. The testimony also showed that following the alleged offense, Defendant had run away to a nearby apartment complex, the same complex where the instant theft occurred. Additionally, the State urged, without opposition from Defendant, that the subsequent theft occurred about ten minutes after the attempted theft. As such, the State maintained that the probative value outweighed the prejudicial effect, asserting that the jury needed to hear the evidence to get a clear understanding of the events that took place that night. The State concluded that Defendant was on a mission to steal a car that night, and, when he was not able to steal the first one, he successfully stole another one that he crashed soon thereafter.

In finding that the evidence was admissible, the trial court reasoned:

> In looking at what has been presented here today, the Court finds that the State has proven that an act, wrong or other offense did in fact occur. Also the Court notes in looking at the totality of that, the temporal connection, the proximity connection is such that the Court would find that the probative value in this situation outweighs any undue prejudicial effect of that evidence. The totality of the presentation is such that the State will be able to present that in establishing their elements with regard to the allegations that have been made against the defendant.

Counsel for Defendant objected to the trial court's ruling and then sought to clarify whether the ruling applied to both witnesses. Defense counsel argued that testimony from both women would be cumulative. The trial court agreed and found that the testimony of only one of the two witnesses was sufficient. The trial court noted, however, "that the State may have an opportunity for rebuttal[,] depending on what's provided by the [d]efense that could lead to the additional witness or additional evaluation." Neither party objected to the ruling.

21

At trial, the State approached the bench after the jury was dismissed for lunch to request that it be allowed to call Shellie Fontenot on direct, rather than as a rebuttal witness. The State maintained that Shellie's testimony was not cumulative and stressed that identification was going to be a much larger issue than anticipated. The testimony of both Laticia and Shellie would provide two separate identifications of Defendant as the result of separate interactions with him.

Defense counsel maintained his prior position regarding the prejudicial effect of the testimony. He argued that the testimony of the second witness about the alleged other crime did not reach the objective of the criminal code and urged the trial court to be cognizant of the balancing test. Defense counsel warned that too much evidence about the other crime could tip the scales in favor of finding him a bad person who steals cars. He also urged that one witness could clearly establish the alleged attempt to steal that car.

The State responded that the parties had not addressed whether the testimony from both witnesses would be cumulative and, thus, prejudicial. The State argued that the question previously addressed by the parties was whether or not the testimony was admissible and that it was the State's position that both witnesses should be able to testify in that regard.

The trial court then vacated its earlier ruling that one witness would be sufficient and held that both witnesses would be allowed to testify. The trial court noted that during *voir dire* and opening statements, significant issues had been raised with regard to the lack of evidence in the case. Because identification was at issue, the trial court determined that it would allow the testimony of both witnesses. Defendant subsequently objected to the ruling.

Laticia Fontenot and Shellie Fontenot testified at trial about their involvement with Defendant minutes before he stole the vehicle involved in the instant offenses. Laticia was in the back seat of Shellie's car when Defendant attempted to steal it. The car was parked at a corner gas station while Shellie and three other passengers were inside the station. Defendant sat down in the driver's seat, and Laticia began to scream and struggle with Defendant to prevent him from starting the vehicle. Eventually, Laticia pulled the key from the ignition and got out of the car, still screaming. Meanwhile, Shellie exited the store and approached Defendant, who was still sitting in her vehicle. Shellie yelled at Defendant, asking him if he was trying to steal her vehicle. She also noticed that he was holding her cigarettes and her keys, and she grabbed them from him. When the store clerk came outside and said she was going to call the police, Defendant took off running toward a nearby apartment complex.

A police officer arrived at the store to speak with the witnesses and then asked them to stay at the store because they had a lead on a suspect. Officers returned to the store about thirty minutes later with Defendant in the back seat of the vehicle. Laticia was asked if she recognized Defendant, and she was able to positively identify him as the perpetrator. Shellie also testified that Defendant was a light-skinned black man. She then identified Defendant in court as the man who attempted to take her vehicle on the night in question.

We note that on appeal, Defendant does not argue that the testimony was cumulative but that it was prejudicial and admitted solely for the purpose of inflaming the jury. As such, we need not address the cumulative-testimony issue. Before and during trial, the State argued that the other crimes evidence was admissible in that the

conduct constituted an integral part of the offense and was necessary for purposes of identification and to show intent.

As noted by this court in *State v. Drake*, 04-1636, p. 6 (La.App. 3 Cir. 6/1/05), 903 So.2d 1166, 1170, "[w]hen identity is an issue, evidence of other crimes is admissible to prove identity. *State v. Phillips*, 92-1063 (La.App. 4 Cir. 2/29/96), 670 So.2d 588, *writ denied*, 96-2131 (La.9/5/97), 699 So.2d 85; La.Code Evid. art. 404(B)(1)." In *Drake*, the State attempted to admit other crimes evidence to prove the defendant's identity as the perpetrator of a robbery. Each of the robberies for which the defendant was convicted involved a perpetrator who wore a mask. None of the robbery victims were able to positively identify the defendant as the person who committed the offense. Following the last robbery, an eyewitness saw the suspect and provided a license plate number of the automobile into which he jumped. The defendant and an accomplice were later arrested, and the accomplice made a statement to the police, implicating the defendant in the robberies at issue. The court found the evidence admissible, because none of the witnesses, other than his accomplice, could identify the defendant as the perpetrator of the robberies. As such, the court determined that the defendant's identity of the perpetrator was an issue.

In *State v. Campbell*, 96-209 (La.App. 3 Cir. 11/6/96), 683 So.2d 1302, *writ denied*, 96-2864 (La. 4/25/97), 692 So.2d 1081, the State sought to submit evidence of the defendant firing a gun ten to fifteen minutes before the shooting of an officer. The witnesses testified that after an argument, the defendant fired three shots at a car as it drove away from a club. The police later collected three casings at the club and one bullet from the car in question. Expert testimony at trial linked the casings and bullet from the earlier shooting incident to a casing and bullet recovered from the

24

murder scene. On appeal, the court found that the evidence of the earlier shooting was clearly probative as to the identity of the officer's killer. The murder weapon was never recovered, and only one witness testified that he saw the officer's murder. Also, the defense vigorously attacked the credibility of the witness.

In *State v. Jolly,* 00-181 (La.App. 5 Cir. 7/25/00), 768 So.2d 165, *writ denied*, 00-2467 (La. 10/5/01), 798 So.2d 959, the court addressed the issue of using other crimes evidence to prove intent to commit the crime of theft of goods valued between $100.00 and $500.00. The State sought to introduce evidence that prior to the offense, the defendant was acting suspiciously in the store and attempted to take some property. The State maintained that "it was not introducing the evidence to show that the defendant acted in a wrong manner or [had] bad character, but rather to show the defendant's system and intent." *Id.* at 168. On appeal, the court noted that an essential element of the offense was the intent to permanently deprive the merchant, and the defendant's intent at the time of the offense was a contested issue at trial. As such, the court found that the testimony regarding the defendant's actions in the store prior to the date of the theft was properly admitted to show intent and to show that his actions were not the result of mistake or accident.

In the instant case, the victim, Mr. Edwards, could not positively identify Defendant as the person who took his vehicle. As such, for the offense of theft over $500.00, the identity of the perpetrator was clearly an issue. Evidence of Defendant attempting to commit the same crime just minutes before and in the same area as the theft herein was highly probative of his identity in that theft. Further, the evidence demonstrated Defendant's intent to commit the theft for which he was on trial. Lastly, the evidence shows that Defendant's actions in taking Mr. Edwards' car were

25

not the result of mistake or accident.

Accordingly, we find that the trial court did not err in allowing the other crimes evidence.

## *PRO SE ASSIGNMENT OF ERROR NO. 4:*

Defendant argues, "Appellate [sic] contends that the trial [court counsel] erred when he did not follow Louisiana Uniform Act [sic] to secure the attendance of his witness[es] by subpoenas." Defendant asserts that he had become disenchanted with his attorney prior to trial, so he wrote to the trial court judge detailing the problems he was having with his lawyer. Defendant alleges that those problems involved communication between him and his attorney as well as the failure to subpoena witnesses and evidence needed for trial. Defendant urges that the right to subpoena witnesses arises under both statutory and constitutional law.

Defendant claims that the attendance of his witnesses was essential as their testimony would have aided his case at trial. Defendant asserts that he should have been allowed to subpoena the witnesses "whether or not the trial court, the state[,] or his attorney found the witnesses [to be] believable, credible, or offensive." Defendant states that, because the witnesses were not subpoenaed, he will never know whether the jury would have found him guilty anyway. Defendant maintains "that his right of compulsory process was abridged because of [sic] the trial [court] did not secure the attendance of his material defense witnesses," which prevented him "from presenting his only defense." Based on these arguments, Defendant requests that this court reverse his convictions and sentences.

The record shows that Defendant wrote a letter to the trial court judge on October 28, 2009. In this letter, Defendant explained that he had asked his attorney

26

to subpoena two witnesses. Defendant listed the first name, building number, and apartment complex of one witness and gave the name and address of a second witness. Defendant stated that, when he requested that his attorney subpoena the witnesses, his attorney said it was too late. Defendant further related that he also asked his attorney to subpoena two ladies from a different case docket number. Defendant professed that these witnesses were needed to prove that the officer who wrote the report committed malfeasance and criminal conspiracy.

In his letter, Defendant stated he additionally requested that his attorney subpoena the cameras from the police unit to show that the officers used excessive force in arresting him. Defendant alleged that, after the canine had brought him face down on the ground, Officer Mitchell Sawyer ran over and kicked him in the head and that this was caught on the police unit cameras. Defendant noted he also asked his lawyer to subpoena surveillance cameras to prove that the officers brought Defendant to a specific location to be identified by an alleged victim. Defendant asserted that the surveillance cameras would prove that the officer who wrote the police report was not the officer in the police report and that, as a result thereof, the officers were not credible and were lying.

Defendant's correspondence also named another witness who provided his attorney with an affidavit. Defendant did not claim he requested that his attorney seek a subpoena for her to appear at his trial. Finally, Defendant stated that he would appreciate the trial court's "help in getting this information to court, or [in] allowing it to go on record" and that he had requested it through his attorney and the court.

Our review of the October 29, 2009 letter does not show that Defendant specifically asked the trial court to issue subpoenas for the witnesses. Moreover, the

27

record shows that the trial court assisted Defendant by relaying a copy of his letter detailing his requests to his attorney.

"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence" unless the error applies to a ruling on a written motion. La.Code Crim.P. art. 841. Since Defendant's letter does not constitute a motion seeking subpoenas for the witnesses, and since Defendant does not point to any other place in the record where he directly moved the trial court to subpoena his witnesses, he cannot now claim error for the trial court's failure to issue those subpoenas.

Insofar as Defendant may be asserting an ineffective assistance of counsel claim for failure to subpoena the witnesses, this claim is relegated to post-conviction relief as it would require a review of evidence not contained in the record.

Accordingly, Defendant is not entitled to relief under this assignment of error.

### PRO SE ASSIGNMENT OF ERROR NO. 5:

Defendant asserts that "a conflict between him and his court appointed counsel before and during trial constitutes a violation of his rights guaranteed by the Sixth Amendment to the United States and Louisiana Constitution[s]." Defendant restates that prior to trial, he had become increasingly unhappy with the representation provided by his attorney. Defendant declares that he sent letters to the trial court judge on October 28, 2009, and May 16, 2010, detailing the problems he was having with his attorney. Moreover, because his attorney failed to file post-trial motions, Defendant filed his own post-trial motions pro se. Defendant claims that he provided the motions to his attorney within a reasonable time and manner for filing.

Defendant argues that this dissension between him and his attorney created an

28

irreconcilable conflict between them. He felt that his attorney was indifferent toward representing him. Defendant claims that his attorney did not proceed according to how he wanted him to "file various pre-trial motions, interview specific witnesses who could have corroborated certain aspects of the defense theory of the charge, interview State's witnesses, and investigate relevant facts of the case." Defendant further complains that his attorney failed to inquire into the facts and the merits of his pro se motions.

Defendant maintains that his letters brought this all to the attention of the trial court in a timely manner so that it would not obstruct the proceedings of that court. He likens his situation to instances where an attorney failed to cross-examine witnesses at trial or where the represented party has become so embroiled in an irreconcilable conflict with his attorney as to deprive the represented party of effective assistance of counsel. Defendant argues that he had the right to conflict-free representation. Though Defendant acknowledges that this applies to cases where the defense attorney's loyalties are divided, he argues that this also applies to his case because his lawyer owed a duty to the prosecution, whose interests were adverse to him. Defendant asserts, therefore, that he was denied his "right to a fair and full trial with conflict-free attorney." He asks this court to reverse his convictions and sentences based on the arguments contained in this assignment of error.

As previously stated, the record also contains Defendant's May 16, 2010 post-trial letter to the trial court judge. In his missive, Defendant named two witnesses and alleged that he asked his attorney to subpoena them. Defendant also asserted that his attorney failed to answer his questions about a plea deal offered by the State. He further claimed that he asked his attorney, via correspondence, about

29

getting a preliminary hearing. Defendant said his attorney did not file a motion for preliminary examination, and, as a result thereby, he did not get one. Defendant informed the trial court that he had filed three different pro se motions for a preliminary hearing and that he subsequently followed up his motions by asking the trial court about the preliminary hearing twice thereafter. He additionally complained that his attorney could have filed motions to quash and for new trial.

In his letter, Defendant claimed that the witnesses for which he requested subpoenas would have provided "powerful testimony" on his behalf about what they saw, which would have shown that the officer lied. Defendant complained that his requested witnesses were not subpoenaed for trial. He further claimed that he had no communication with his attorney. Defendant went on to explain that he filed pro se motions because his attorney wanted an additional $15,000.00 to file the following motions: a motion seeking new trial; a motion to oppose the habitual offender bill of information; and, a post-trial motion to quash. Defendant did not ask the trial court to take any action in response to his letter. He then attached to his letter a post-trial Motion to Quash based on ineffective assistance of counsel as well as a post-trial Motion to Suppress evidence due to a faulty or missing chain of evidence.

Defendant does not assert that his trial attorney was engaged to represent, either in the past or contemporaneously, any party having a conflict of interest with his defense of the instant case. He does not allege any facts that would have divided his attorney's loyalties. *See* La.Code Crim.P. arts. 511 and 517; *see also State v. Kahey*, 436 So.2d 475 (La.1983). Defendant has failed to prove any conflict of interest; hence, his claim of conflict of interest is without merit.

Insofar as Defendant appears to be asserting an ineffective assistance of

counsel claim based on his trial attorney's failure to adequately investigate the case, based on his trial attorney's refusal to allow Defendant to dictate trial strategy, and based on the possibility that the resulting discord between Defendant and his trial attorney affected his attorney's trial performance, those assertions are relegated to post-conviction relief as the resolution of the issue would require the review of evidence that is currently not in the record.

Accordingly, Defendant is not entitled to relief under this assignment of error.

## PRO SE ASSIGNMENT OF ERROR NO. 6:

In this assignment of error, Defendant argues that trial counsel was ineffective by failing to object to the exclusion of responsive verdicts. Defendant maintains that La.R.S. 14:34.2, battery of a police officer, and La.R.S. 14:37, aggravated assault, should have been included as responsive verdicts to La.R.S. 14:34.6 and 14:27, attempt to disarm a peace officer.

As noted by this court in *State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701:

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*See also State v. Jones*, 09-1453 (La.App. 3 Cir. 8/11/10), 45 So.3d 1136.

With regard to ineffective assistance of counsel, the second circuit, in *State v. Kinsey*, 42,935, p. 9 (La.App. 2 Cir. 2/13/08), 976 So.2d 315, 320-21, stated the following:

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. *State v. Wry*, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Moore*, 575 So.2d 928 (La.App. 2d Cir.1991).

Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires defendant to establish that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *Strickland*, *supra.*; *State v. Pratt*, 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174, *writ denied*, 95-1398 (La.11/3/95), 662 So.2d 9.

*See also State v. C.S.*, 10-507 (La.App. 3 Cir. 11/17/10), 50 So.3d 983.

Responsive verdicts allowed under La.Code Crim.P. art. 814(A)(14.1) for attempted disarming of a peace officer include battery of a police officer and aggravated assault. The record before us in the instant case reflects that the jury was not provided with any responsive verdicts to the offense of attempt to disarm a peace officer. Additionally, defense counsel did not object to the jury charges at trial.

In *State v. Roland*, 36,786 (La.App. 2 Cir. 6/5/03), 850 So.2d 738, *writ granted in part*, 03-1930 (La. 1/16/04), 865 So.2d 692, *writ denied*, 03-2395 (La. 2/13/04), 867 So.2d 685, our colleagues on the second circuit were faced with a similar claim. In that case, the defendant argued that his counsel was ineffective for failing to object to the exclusion of criminal trespass as a responsive verdict to the charged offense of unauthorized entry of an inhabited dwelling. The court stated:

32

> The fact that a responsive verdict is not included in a jury charge is not necessarily an error patent, and does not establish ineffective assistance of counsel. When the crime of prosecution is one of the 58 listed in C.Cr. P. art. 814, the trial court may "exclude" a responsive verdict, but cannot add to the number. See, *State v. Hall*, 26,505 (La.App.2d Cir.12/7/94), 647 So.2d 453, *writ denied*, 95-2188 (La.3/17/97), 691 So.2d 69. A defendant may also not object to the addition or deletion of responsive verdicts as a trial strategy. See, *State v. Martin*, 525 So.2d 535 (La.App. 5th Cir.1988).

*Id.* at 745-46. The court in *Roland* concluded that the jury's verdict was clearly supported by overwhelming evidence, and thus, nothing in the record pointed to an ineffective assistance of counsel claim.

Our supreme court, however, granted writs in part, in *Roland*, 865 So.2d 692, and ordered the district court to hold a hearing to determine whether trial counsel rendered ineffective assistance by failing to request inclusion of criminal trespass as a responsive verdict. The court found that the record was insufficient to determine the merits of the defendant's claim, considering prior rulings where criminal trespass was found to be a lesser and included offense of unauthorized entry of an inhabited dwelling.

In the instant case, although battery of a police officer and aggravated assault are responsive verdicts of disarming of a peace officer, the record is sufficient to determine the merits of Defendant's claim, and it does not support Defendant's claim that his counsel was ineffective for failing to object to the exclusion of these verdicts. The jury's verdict of attempting to disarm a peace officer was clearly supported by the evidence adduced at trial—with the use of force and without the consent of Officer Willson, Defendant attempted to take possession of her service gun while holstered on her person. This evidence to support this conviction, however, would not satisfy the elements of the responsive verdicts of battery of a police office and

aggravated assault. As such, the responsive verdicts allowed under La.Code Crim.P. art. 804 for disarming a peace officer were not appropriate in the trial of this matter and were, therefore, rejected by trial court. *See State v. Moore*, 38,444 (La.App. 2 Cir. 6/23/04), 877 So.2d 1027, *writ denied*, 04-2316 (La. 2/4/05), 893 So.2d 83.

Accordingly, we find that this assignment of error is without merit.

## DISPOSITION

Defendant's convictions, habitual offender adjudication, and sentences are affirmed.

**AFFIRMED.**